**Herman A. PINEDO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19220.**

United States Court of Appeals Ninth Circuit.

June 18, 1965.

Rehearing Denied Sept. 22, 1965.

Morris Lavine, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Richard A. Murphy, Asst. U. S. Atty., Chief, Crim. Sec., Russell R. Hermann and Brin Schulman, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and PENCE, District Judge.

PENCE, District Judge:

Herman A. Pinedo, appellant, and his wife Celia C. Pinedo, were jointly indicted on October 3, 1962, for violating 26 U.S.C. § 7201, viz., wilfully attempting to evade payment of part of their United States income tax due for the calendar years 1956, 1957 and 1958, by filing false joint income tax returns whereby in each year they stated that their taxable income was nothing and therefore they owed nothing to the United States, whereas, the indictment alleged, for the year 1956 they had a taxable income of $5937.88 with a tax of $1226.33 due thereon, 1957 taxable income of $10,510.-20 with a tax of $2332.65 due, and 1958 taxable income of $5578.56 with a tax of $1147.28 due.

On December 3, 1962, the Pinedos appeared in court without counsel, were arraigned, and the case continued until December 10, 1962, for plea. On that day, the two appeared with their retained attorney, Alkow, and the matter of plea was continued until December 17, 1962. Each then pled not guilty to each of the three counts and trial was set for May 6, 1963. On May 6th, trial was continued until October 7, 1963. On that day, Alkow advised the court that the Pinedos wished to withdraw their pleas of not guilty and enter pleas of guilty as charged in each of the three counts.

Under the practice of that district court, before a defendant is allowed to plead guilty, he is required to sign, in open court and in the presence of his attorney, a petition to enter a plea of guilty on a form supplied by the court. As to parts pertinent here, the petition recites that the defendant has told his counsel all of the facts of the case, that counsel has fully advised him of his rights and possible defenses, the maximum punishment, and that probation may or may not be granted. It further recites that the defendant declares that no one has made any promise that he would receive probation if he pled guilty; that he hopes to receive probation but is prepared to accept any sentence the court might impose; that he makes no claim of innocence; and that he understands the statements in the indictment and the petition. This petition is accompanied by a certificate of counsel which recites *inter alia* that counsel has read and explained the petition to the defendant.

The petitions and certificates were signed by each defendant and by counsel in this case. Immediately thereafter, Pinedo was asked by the clerk as to his plea, to each count, and as to each count, upon his plea of "Guilty", the clerk then asked him: "Do you now plead guilty because you are guilty?", and each time the answer of Pinedo was "Yes." At the same time, the same procedure was followed by and for Mrs. Pinedo, who likewise changed her plea from not guilty to guilty.

The matter of sentence as to each was continued from October 7th to November 26, 1963, at which time Pinedo was sentenced to a concurrent period of three years on each of the three counts. Mrs. Pinedo was placed on probation. The court suspended execution of Pinedo's sentence until January 6, 1964.

On January 14, 1964, Pinedo, with a new attorney, filed a motion to vacate and

set aside the judgment of the court [1] or in the alternative, modify the sentence and grant Pinedo probation. The grounds claimed by Pinedo were that (1) he was innocent; (2) he was incompetently represented by counsel; (3) at his attorney's direction he signed the petition to enter a plea of guilty without having read or understood it. After a 3-day hearing, during which time Pinedo's first attorney, Alkow, his accountant, Jiminez, and Pinedo himself testified on his behalf, and the Internal Revenue Service investigator on the case also testified, the sentencing judge, on March 24, 1964, denied the defendant's motion. This appeal followed.

The point raised on appeal are:

1. The court erred in failing to set aside Pinedo's plea of guilty and judgment of conviction based thereon to correct manifest injustice, under Rule 32(d), F.R.Crim.P. [2]

2. The court erred in failing to correct an illegal sentence under Rule 35, F.R.Crim.P. [3]

3. The obtaining of a judicial confession (plea of guilty) under the circumstances of this case violated the due process clause of the Fifth Amendment [4] and was therefore void.

At the time of sentence, Pinedo was 41 years old. He was a high school graduate, and for 13 years before conviction had been employed in a supervisory capacity by a very large vegetable growing, packing and shipping company operating in California, Arizona and Mexico. In the company's lettuce harvesting operation in Imperial Valley it was Pinedo's responsibility to procure some 400 lettuce pickers, supervise the operation, maintenance and care of some 8 labor buses, and supervise the company's 3 labor camps in Imperial Valley for housing and feeding the employees. Pinedo was responsible for the daily reporting of field labor time for each picker and he also acted as paymaster. He handled the irrigation records for over 1,000 acres of farm land.

The tax fraud charges stem from the operation by the Pinedos of the labor —"bracero"—camps, i. e., the housing and feeding of the workers, for which the company paid Pinedo a contracted price and out of which Pinedo admittedly made a profit. Pinedo had paid the help, sometimes in cash and sometimes by check drawn upon his bank account. Mrs. Pinedo had handled the records. Neither Pinedo nor Mrs. Pinedo had ever reported to their accountant Jiminez that they had ever received any monies for operating such camps during the 10 years preceding the indictment. Pinedo admitted that he signed the joint returns but maintained that he had paid no attention to the figures, that he had left all of that up to his wife.

Pinedo also maintained that he would not have pled guilty if he had not been advised by his attorney to do so; that his attorney had assured him that if he pled guilty he would be given probation and all he would be forced to do was to pay to the Goverment the unpaid taxes.

At the hearing on Pinedo's motion to vacate, supra, attorney Alkow was vigorously examined by Pinedo's new attorney, the government attorney, and the court. He testified that he had several conferences with the Pinedos in Los Angeles and in Imperial Valley; that with Pinedo, he had attempted (unsuccessfully) to locate some of the Mexican cooks and bracero camp employees who Pinedo said would substantiate the fact that he had made certain payments to them in cash; that he had had several conversations with the Assistant U. S. Attorney in

1. No such motion was ever filed by Mrs. Pinedo.

2. Rule 32(d): "Withdrawal of Plea of Guilty. * * * [T]o correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

3. Rule 35: "Correction or Reduction of Sentence. The court may correct an illegal sentence at any time. * * *"

4. Fifth Amendment, United States Constitution: "No person shall * * * be deprived of * * * liberty * * * without due process of law; * * *."

charge of the case and that after the conferences he felt pretty confident that the Pinedos would each be granted probation. He insisted that he had explained the charges to the defendants; that each had understood the accusations; that he had discussed various aspects of the plea of guilty with them and did not hide the fact that there could be a prison sentence. Alkow said that the Assistant U. S. Attorney did not specifically promise to make a recommendation of leniency, but it was his understanding that the Government would not ask for a prison sentence.[5] While Alkow admitted he had not read the entire petition to the Pinedos, he insisted that he had gone over the form with them there in the courtroom before they signed it.

While the district court, during Alkow's examination, said it was not satisfied with Alkow's testimony and the way he had handled the case for the defendant, nevertheless, after all of the evidence was in, the court concluded:

> "I think he [Alkow] can be very seriously criticized for the way this case has been handled, but I do not believe that that justifies the setting aside of the judgment. I am satisfied in my own mind that the defendant had a fair hearing. If he had raised at any time this question that he didn't understand, I would have set aside his plea up to the time he was sentenced, but after he was sentenced, and then he discovered that his sentence included a term in a federal institution, then he changed his story. He changes his position. I don't think I can accept it. So the motions are denied." (T.R. 169–170)[6]

At the inception, the allegations in Pinedo's motion for relief under Rule 32(d) are rendered suspect by the fact that almost seven weeks elapsed between the day he pled guilty and the day he was sentenced, without any claim of innocence or misrepresentation of counsel, nor were any such claims made at the time of sentencing. Furthermore, the execution of the sentence was stayed until January 6, 1964—and thus forty-one days more passed by without any outcry of innocence or injustice.

The record does not show what transpired on or about January 6th other than that on the day Pinedo was supposed to surrender he apparently waited for Alkow at the United States Courthouse, but Alkow did not show up and Pinedo could not contact him. Pinedo's motion to set aside judgment of conviction under Rules 32(d) and 35 was not filed by his new attorney until January 14, 1964.

Pinedo is not a simpleton nor a fool. The record shows him to be an educated, intelligent, articulate person, fully capable of handling difficult situations demanding reason and judgment. He was aware of his obligation to pay taxes. He knew that he had made a profit on the bracero camp operations. He signed the Pinedos' joint returns. Even though at the hearing on the motions he attempted to relieve himself of all responsibility for his tax returns by saying that all such records were kept by his wife—claiming he was innocent because "I didn't make out the return. I left it all to my wife."—the district court had full opportunity to evaluate Pinedo's statements—as has this court. That court, like this, was not convinced that Pinedo is manifestly innocent of the charges to which he pled guilty.

If the record showed that the United States Attorney had promised that Pinedo would be placed on probation and that his plea of guilty was founded upon that promise, a different problem would be presented.[7] However, Alkow never once testified that any such promise had

---

5. At the time of sentencing, the Government did not suggest imprisonment of Pinedo.

6. Cf. Reid v. United States, 334 F.2d 915, 919 (9th Cir. 1964).

7. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

been made him by the United States Attorney. The strongest statement that Alkow could and did make was that the United States Attorney believed that the Pinedos would be placed on probation and that the United States Attorney did not propose to recommend imprisonment. If Alkow is to be believed at all, in making his representations to the Pinedos he did tell the Pinedos that he, as well as the United States Attorney, believed the Pinedos would get probation. Alkow insists that he told the Pinedos that if the judge wanted to impose a prison sentence he could do it.

Pinedo himself did not claim that Alkow had said that the United States Attorney had *promised* probation, testifying only that Alkow had reported to him that the United States Attorney was "favorable to probation."[8] While Pinedo claimed that he had signed the petition and pled guilty because Alkow had promised that he and Mrs. Pinedo would get probation, as indicated, Alkow denied making any such flat promise.

Alkow was an attorney of 25 years experience. Although he had never had a tax case before, in making his recommendations that the Pinedos plead guilty, he was faced with the fact that the money received from the bracero camp operations had never been reported on the Pinedos' tax returns during the prior ten years. When Pinedo claimed to have paid out much of the money in cash—thus indicating that it might be possible to prove that the expenses of the operation equaled the income—thereby denying profit—Alkow made a real effort to see if he could find proof of such payments. But even with Pinedo's assistance, the witnesses to whom Pinedo claimed he had made payments could not be found. As Alkow said, without witnesses Pinedo had no case. Even if Pinedo, at the hearing on his motion, had not *admitted* making a profit on the camp operations, we would agree with Alkow.

Even if the district court had found—which it did not—that, as Pinedo claimed, he had pled guilty only because of the assurance of Attorney Alkow that he would be given probation, the only question which would then be presented was whether on the underlying record it would constitute "manifest injustice" under Rule 32(d) to refuse to set aside the plea and judgment of conviction.[9] As pointed out in United States v. Parrino, 212 F.2d 919, 921 (2nd Cir. 1954):

"[I]n criminal cases, the defendant's surprise as to the severity of sentence imposed after a plea of guilty '* * * is not such manifest injustice as to require vacation of the judgment and * * * to withdraw a plea of guilty.[2] [See cases cited.] * * * [S]urprise * * * which results from erroneous information received from the defendant's own attorney, at least without a clear showing of unprofessional conduct, is not enough.[4] [See cases cited.]

"[A]ny notion * * * that the Court guarantees the accuracy of information given by a member of its Bar to a client-defendant is obviously subject to the qualification that the Court represents not that members of its Bar are infallible but, at most, that they will function with due regard to their professional obligations." [Portion of note 4.]

It appears to this court, as it did to the district court, that Pinedo freely and knowingly entered his plea of guilt to the charges—to be sure hopefully believing, as did Alkow, that he would get probation. Long, long thereafter, after a sentence of imprisonment, and after he had consulted with another attorney, he claimed innocence. Proof in this case falls far short of showing any manifest injustice on the part of the district court in refusing to set aside Pinedo's plea and the court's judgment of conviction.

---

8. Cf. United States v. Roland, 318 F.2d 406 (4th Cir. 1963).

9. Ridgeway v. United States, 205 F.2d 680 (6th Cir. 1953).

■ As this court pointed out in Kadwell v. United States, 315 F.2d 667, 670:

"Rule 32(d) imposes no limitation upon the withdrawal of a guilty plea *before* sentence is imposed, and such leave 'should be freely allowed.' * * [W]ithdrawal of a guilty plea *after* sentence is conditioned * * * upon a showing of 'manifest injustice.' * * * [I]f a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe."

Other decisions, likewise, repeatedly emphasize that disappointment in the sentence imposed is no ground for withdrawal of a guilty plea. (Id. note 11.)

■■ Similar to the situation in Zaffarano v. United States, 330 F.2d 114 (9th Cir. 1964), here, too, was substantial evidence to support the trial court's finding that Pinedo's plea of guilt was freely and voluntarily made as a matter of law. This court will not disturb the trial court's ruling in the absence of an abuse of discretion.[10] We here find no such abuse.

■■ As this court said in Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962), cert. denied, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143:

"Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' [Note omitted.] Determining whether the demands of due process were met in such a case as this requires a decision as to whether 'upon the whole course of the proceedings,' and in all the attending circumstances, there was a denial of fundamental fairness; [note omitted] it is inevitably a question of judgment and degree."[11]

■ "Upon the whole course of the proceedings" here, the district court did not and this court does not find that Alkow did not render reasonably effective assistance to Pinedo, or that Pinedo was denied effective aid in the preparation and initial conclusion of Pinedo's case. Since under Rule 32(d) a district court has the power to grant a motion to set aside a plea of guilt after sentence only after such action appears to be necessary "to correct manifest injustice," the district court has a substantial discretion in making a determination of the requirements of justice. This court will reverse a refusal of such a motion only after the record unequivocally demonstrates that such refusal was manifestly unjust,[12] and we find no such injustice manifested here.

■■ There is no merit to appellant's claim of error under Rule 35. An illegal sentence as used in Rule 35 applies *inter alia,* to a sentence which is not authorized by the judgment of conviction.[13] Pinedo's sentence of three years, on each of the three counts, to run concurrently, not being in excess of the permissible statutory penalty for the crime, was legal.

■ There is likewise no merit to appellant's third claim of error in that the obtaining of a judicial confession (plea of guilty) under the circumstances here violated the due process of the Fifth Amendment. We are not here faced with the problem of convictions involving use of judicial confessions during trial, and

10. Vasquez v. United States, 279 F.2d 34, 37 (9th Cir. 1960).

11. See also, Black v. United States, 269 F.2d 38, 42 (9th Cir. 1959); Peek v. United States, 321 F.2d 934, 945 (9th Cir. 1963); Reid v. United States, supra; Wilson v. Gray, 345 F.2d 282 (9th Cir. 1965); Bouchard v. United States, 344 F.2d 872 (9th Cir. 1965).

12. United States v. Roland, 318 F.2d 406, 409 (4th Cir. 1963); United States v. Washington, 341 F.2d 277, 281 (3rd Cir. 1965).

13. United States v. Morgan, 346 U.S. 502, 505–506, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

the cases cited by appellant [14] in support of this claim of error are completely inapposite. Here, as we have above determined, the comprehensive hearing in the district court on Pinedo's motion under Rule 32(d) fully complied with the requirements of the due process clause of the Fifth Amendment.

Affirmed.

---

14. Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 81 L.Ed. 166 (1941); Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954); Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944).