Charles W. DENNIS, Appellant,

v.

**PEOPLE OF the STATE OF CALIFOR-NIA, and L. E. Wilson, et al.,**
Appellees.

No. 22534.

United States Court of Appeals
Ninth Circuit.

July 11, 1969.

Rehearing Denied Aug. 19, 1969.

Douglas P. Ferguson (argued), San Francisco, Cal., for appellant.

John Murphy (argued), Asst. Atty. Gen., Thomas C. Lynch, Atty. Gen., Albert W. Harris, Jr., Asst. Atty. Gen., Robert R. Granucci, Deputy Atty. Gen., San Francisco, Cal., for appellees.

Before BARNES and KOELSCH, Circuit Judges, and HALL, District Judge.*

BARNES, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Northern District of California which denied, without a hearing, the state prisoner's petition for a writ of habeas corpus. An order to show cause was issued, and the district court judge, after examining the Return filed by the State, and petitioner's Traverse to such return concluded petitioner's basic contentions were that he was coerced into pleading guilty, and was not adequately represented by counsel. The district court carefully repeated petitioner's charges, and decided that before he could fairly determine the issues presented

"that petitioner should supply the Court with additional facts before the Court decides if an evidentiary hearing is required. Most of petitioner's application is devoted to legal argument and to charges of 'threats', 'coercion' and 'harassment' [sic] by the authorities as well as recitation of events prior to his arrest. This is not the purpose of habeas corpus. Petitioner must give the specific facts of 'Who', 'When' and 'Where' in support of his alleged conclusions that he was coerced into pleading guilty and was not adequately represented by counsel. See Schlette v. California, 284 F.2d 827, 834 (9th Cir.1960)." C.T. at 93.

The district court then specifically pointed out the conclusionary language

that needed amplification, and requested that the court be furnished:

"(1) a transcript of all judicial proceedings concerning petitioner from the date of his arrest on July 5, 1960, to his final court appearance on September 28, 1962,[1] and (2) all medical reports" during that same period. *Id.* at 94.

Exhibits 1 to 4, inclusive, were furnished the district court, and petitioner filed a sixteen page supplement to his petition. The first twelve pages of this supplement relate to the events prior to his commitment to the Patton State Hospital in 1960. (C.T. 96–107.) In the next one-half page, from page 107, line 28, to line 13, page 109, petitioner describes what occurred after his return and his second arrest. At that time he was rearraigned on the four charges originally filed against him: 1. assault with intent to murder, 2. kidnapping with harm to the victim, 3. first degree robbery and 4. forcible rape. California Penal Code §§ 217, 209, 211a, 261, subd. 3.

Nowhere in petitioner's version is there any reference to, or claim of, physical coercion by anyone, after his escape and prior to his guilty plea. Petitioner does charge that the public defender named to defend him recommended that he plead guilty, stating that petitioner could thus get life imprisonment and avoid the death penalty, and his attorney explained that:

"California did not have such sentence as Life Without Possibility of Parole, that Petitioner would be eligible for parole after seven (7) years. He [the public defender] warned petitioner that if he plead guilty that the Presiding Justice would state Life Without Possibility of Parole but only for the benefit of Public and that petitioner

---

* Hon. Peirson M. Hall, Senior Judge, United States District Court, Los Angeles, California, sitting by designation.

1. To understand the significance of these dates one must know petitioner was found insane on September 21, 1960, was com-

mitted for observation as to his sanity to Patton State Hospital on September 24, 1960, escaped from the hospital, traveling over the country for two years before being rearrested on September 22, 1962.

was not to become upset when the Judge state [sic] Life Without Possibility of Parole." R.T. at 108.

. He further asserts that he protested his total innocence of any crime to the public defender, but was persuaded to enter the plea of guilty when his attorney told him: "No[w] just think about it, seven (7) years aren't long compared to your life in the gas chamber." *Id.*

We recognize, of course, that there can well exist coercion invalidating a plea of guilty, where there is a total lack of physical abuse. Blackburn v. Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Mathis v. Nelson, Warden, 411 F.2d 1363 (9th Cir. 1969). The questions before us, therefore, are: (1) Was the public defender unable to properly defend petitioner, because he had once been a deputy district attorney? (2) Was there "psychological coercion," or did petitioner's counsel do no more than advise his client of the possible penalties involved were he found to be guilty? The district attorney answered these two questions in the language appearing in the margin.[2]

2. "Concerning petitioner's allegation that his attorney had been a member of the District Attorney's staff when petitioner was originally charged, the Reporter's Transcript of September 28, 1962 (pp. 1–2) shows that this circumstance was fully explained in open court and that defendant approved of the appointment.

"Petitioner's allegation that this attorney alluded to the possibility of the gas chamber and to the circumstances of the effect of his escape from Patton, and pressured him into pleading guilty, does not amount to a substantial allegation of coercion. The gas chamber was a real possibility because petitioner was charged with violation of Cal.Penal Code § 209 (which provides the penalty of death or life imprisonment without possibility of parole in cases where the person subjected to kidnapping suffers bodily harm). It was counsel's duty to frankly advise petitioner of all the circumstances.

"Concerning petitioner's contention that his attorney was incompetent and that petioner was denied adequate representation by counsel, petitioner's allegations that his counsel visited him but once does not necessarily amount to a charge of inadequacy of representation.

"There is nothing to indicate that counsel failed to properly investigate and consider possible defenses. Nothing is alleged that would negate the possibility that counsel's information concerning the available evidence justified the advice to plead guilty notwithstanding petitioner's alleged assertion of innocence. Certainly, such advice should not be presumed to have been given by the attorney through incompetence or malice.

"Petitioner's allegation that his attorney told him that he would be eligible for parole on the kidnapping charge in seven years, must be considered in the light of the proceedings at time of plea. (Reporter's Transcript [RT p. 3]), which proceedings were as follows [sic]:

'MR. BIDDLE: Count two, Your Honor, with respect to count two, it is the defendant's desire to enter a plea pursuant to Section 1192.3 of the Penal Code, under which section is imprisonment *without* possibility of parole. (emphasis added). If it is agreeable with the District Attorney's Office, it is the defendant's desire to enter a plea to count two.'

"California Penal Code § 1192.3 allows a defendant charged with an offense to specify in his plea of guilty the punishment he is to receive. If the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant cannot be sentenced to a punishment more severe than that specified in the plea.

"The Reporter's Transcript further shows that the Court then read count two to the petitioner (RT 3), and proceeded to explain to petitioner the consequence of his plea (RT 4–5) as follows:

'THE COURT: * * * Your counsel, the Public Defender here, has stated that you wish to enter a plea of guilty to this court and admit the fact that you were armed with a deadly weapon, as provided in Section 1192.3 of the Penal Code of this State, that you be imprisoned in the State Prison for the term no greater than the remainder of your natural life, *without possibility of parole.* Is that your understanding of this matter?' (emphasis added).

'THE DEFENDANT: Yes, sir.

'THE COURT: It is your wish to enter a plea of guilty to count two as charged in the indictment as I have just read it to you?

'THE DEFENDANT: Yes.

'THE COURT: No force or duress has been exerted upon you?

To the foregoing, we believe we should add several comments. First, it was conceded in oral argument that the petitioner does not charge any "deal" existed between the sentencing judge and anyone else. Second, that it taxes credulity to believe that if petitioner learned in 1962 that his attorney had erroneously advised him as to the law, despite the contrary expression by both the attorney and the state judge at the time of sentence (see Resp's Ex. 2), no mention would be made of it by petitioner until over three years later. Third, our belief as to petitioner's present recollection is further stretched because the record before the district judge indicates that the petitioner was examined at Chino Prison in November of 1962 (within a month after his sentence) at

THE DEFENDANT: No sir.

THE COURT: And may I ask if there have been any promises. Has any promise been given you with respect to this plea?

THE DEFENDANT: No, sir.

THE COURT: The plea of guilty to count two of the indictment will be entered with a further provision this plea is made under Section 1192.3 of the Penal Code, with the admission the defendant was armed with a deadly weapon.'

"The trial court then proceeded to read each of the other counts of the indictment to petitioner and petitioner pled guilty to each of the counts already above set forth.

"The Reporter's Transcript further shows that petitioner waived time for sentence (RT 11–12) and that the court then imposed sentence on count two:

THE COURT: * * * As to count two of the indictment it will be the judgment and order of the Court that Charles William Dennis be imprisoned in the State Prison for the remainder of his natural life, without possibility of parole.'

"Petitioner's allegation concerning his attorney's assurance of parole eligibility in seven years must be considered in the context of these proceedings.

"We can understand that, where (as in Gilmore v. California, 364 F.2d 916, 918–919 (9th Cir. 1966)), a petitioner alleges that his attorney had told him that there was a 'promise' by the Court, 'an agreement' with the District Attorney, and in effect a 'deal' for a lenient sentence, the allegation (allowing for lack of skill in pleading), should be regarded as impliedly stating that there was such a deal in which the court and prosecution participated. Here, however, petitioner's allegation concerning what his attorney told him falls far short of stating, implying or suggesting any statement by the attorney that such a deal had been made with the court and/or the prosecuting attorney.

"Petitioner merely alleges that the attorney explained to him (erroneously) that California did not have life sentence without possibility of parole and that petitioner would be eligible for parole after seven years, coupled with the attorney's further statement to the effect that the judge would, nevertheless, state 'life without possibility of parole.'

"There is nothing in this allegation to support the implication that petitioner was being told of any 'deal' for life with possibility of parole—only the attorney's erroneous explanation that petitioner would get parole in seven years no matter what the judge on the bench might say.

"We cannot, therefore, treat petitioner's allegation as intending to state either that there was such a deal or even that the attorney told him there was such a deal.

"The petition in the pending case falls within the rule, recognized in *Gilmore, supra,* that mere disappointment at the severity of the sentence received upon a plea of guilty is no ground for habeas corpus 'even where defendant's counsel expressed an opinion that leniency will be granted'. (emphasis added). See Pinedo v. United States, 347 F.2d 142 (9th Cir. 1965); United States v. Parrino, 212 F. 2d 919 (2d Cir. 1954).

"Reverting to our previous reference to alleged incompetency of counsel, we do not believe that the mere allegation that the attorney erroneously stated the law regarding penalty on conviction of count two alleges incompetency of counsel—especially when read in connection with the transcript of proceedings already cited above, indicating that counsel did in open court correctly set forth the alternative penalty of life without possibility of parole and that defendant indicated his understanding thereof.

"For the reasons above set forth the Court concludes that petitioner's application for the writ of habeas corpus does not allege facts upon which relief could be granted * * *." (C.T. 127, line 32 to 132, line 14.)

which time his statement was as follows:

"I don't realy no why I did it I was just rideing in my car the very next thing I new it all had happen but I so very very sorry about thais I ask the lawer that handel the case to tell the lady and the man I am sorry not just becose I in Jail I mean it from my heart. I was afread so I ran away but I was glad to come back becose God law also man law had been broken I broke it I Bad Prison I was just mix-up. Yes I wont peoples to understand me I also to do like wise to peoples I sorry its all done now and I no it wont help now I just hope to God these peoples can find room in thai heart for forgive me sir. I give you my word I will do my very best to do the right thing from thais day on Not —only here in Prison but *if I every by free.*" (Emphasis added.)[3]

 This court has granted evidentiary hearings after a plea of guilty in the trial court, when there existed factual allegations of a deprivation of a constitutional right, not rebutted by the record of proceedings in that court. Here we have the cold certainty of the record as to what happened at the 1962 plea of guilty, and as to what petitioner's understanding of the law was when it was not to his advantage to understand otherwise. Unless we were to adopt a rule that every writ of habeas corpus filed by a state prisoner requires an evidentiary hearing, there must be some line of demarcation, where some discretion, however small, remains in the district court. Otherwise 28 U.S.C. § 2243, and particularly the last paragraph thereof, means nothing. *Cf.* Briley v. Wilson, 376 F.2d 802 (9th Cir. 1967); Gilmore v. California, 364 F.2d 916, 918–919 (9th Cir.1966).

 The district court (and we think properly) distinguished the facts in Gilmore v. California, *supra,* from those here existing. It is here conceded there

was no "deal" in which the court or the prosecution participated. Nor, as the district court stated, is there any claim petitioner's attorney had participated in any "deal," or had even told him (appellant) there was such a "deal." *See* Pinedo v. United States, 347 F.2d 142 (9th Cir.1965). In Anthony v. Fitzharris, 389 F.2d 657 (9th Cir.1968), the defendant had sought, before sentencing, to withdraw his previous plea of guilty. That showing was held sufficient to require a hearing. No such circumstance here existed.

The denial of the writ of habeas corpus is affirmed.

---

3. "'Inmate's Version', p. 3—Cumulative Case Summary, State of California Department of Corrections". (Respondent's Ex. No. 1.)