Bobby Joe WINKLER, Appellant,

v.

STATE of Alaska, Appellee.

No. 2949.

Supreme Court of Alaska.

June 30, 1978.

J. Randall Luffberry, Tull & Luffberry, Palmer, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

The main issue in this appeal is whether the superior court erred in refusing to allow a withdrawal of a guilty plea. Another issue in this appeal is whether the superior court failed substantially to comply with the requirements of Criminal Rule 11(c) and (d). We affirm.

Bobby Joe Winkler was indicted on two counts of assault with a dangerous weapon. Winkler, who was alleged to have been drinking on the day of the assaults, took a pistol from the dressing room table of Sonia Foss, his employer, and shot her twice in the head. Both shots grazed her and did not result in serious wounds. The second count resulted from Winkler allegedly having pointed a pistol at a police officer.

After initially pleading not guilty to both charges, Winkler pled guilty to the first count and the second count was dismissed. The plea was accepted and the court ordered a full presentence report and psychiatric evaluation. Upon the receipt of a negative psychiatric report, the superior court ordered more testing. At the sentencing hearing after consideration of the presentence report, psychiatric reports, and taking further testimony, the court sentenced Winkler to serve a 5-year term of imprisonment. Thereafter, a motion to withdraw his guilty plea was filed by Winkler. After a series of substitutions of counsel, a hearing was finally held and the withdrawal motion denied. From the above decision, Winkler appeals.

■ Winkler first contends that the superior court committed reversible error in denying his motion to withdraw his guilty plea. Alaska Crim.Rule 32(d)(1)[1] permits

---

1. Rule 32(d)(1), Alaska Rules of Criminal Procedure, provides, in part:

 The court shall allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct manifest injustice.

 (i) A motion for withdrawal is timely and is not barred because made subsequent to

judgment or sentence if it is made with due diligence.

 (ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant demonstrates that:

 (aa) He was denied the effective assistance of counsel guaranteed to him by constitution, statute or rule, or

withdrawal of guilty pleas only if the defendant "proves [it] is necessary to correct manifest injustice." Winkler contends that he demonstrated manifest injustice on two grounds: that there was an implied plea bargain involving a promise of psychiatric outpatient treatment and probation which Winkler failed to receive, and as a separate ground that his attorney, in advising him as to his plea, rendered ineffective assistance. Both claims grow out of the charge negotiations and the subsequent sentencing hearing. Thus, at the outset, it is necessary to relate in some detail the proceedings which led up to the entry of the guilty plea and sentencing.

At a bail hearing, Judge Burke, after ordering Winkler released on an unsecured bond, suggested that Winkler, his attorney, the victim and the district attorney "sit down somewhere and see if [they could] work out something short of trial, or what [they would] need to get ready for trial." [2] After the court recessed, the four went to a jury room and discussed a number of matters relating to the case. The principal focus of the discussion was Winkler's alcohol abuse and what programs might solve that problem. Among the options discussed were Winkler's voluntary enrollment in an alcoholic rehabilitation unit for six weeks and outpatient therapy of either a psychiatric or alcohol treatment nature. No mention was made of incarceration during this

conference. At the end of the 45 minute conference, the district attorney suggested that Winkler plead guilty to the first count and they would try to give Winkler some help. William Bryson, Winkler's attorney, later stated he left the discussion with the impression that everyone was supportive of a probationary concept. At the hearing to withdraw his plea, Winkler testified that he thought as a result of this meeting that he would get probation and treatment for his alcoholism. Winkler also testified that he would not have changed his plea if he had not thought he was going to get alcoholic rehabilitation and psychiatric help. At the end of these discussions, Bryson recommended to Winkler that he change his plea.

The following day Winkler moved to change his plea to guilty on count one. The district attorney informed the court that if this was accepted, count two would be dismissed. He also indicated that this was the extent of the negotiated plea bargain and that otherwise there would be open sentencing. The superior court then inquired of Winkler. as to the voluntariness of his plea and his understanding of what rights he was waiving. The superior court obtained Winkler's acknowledgment that there were no commitments made by the state as to any recommendation as to sentencing, that the only promise made to him was the dismissal of the second count and that no one had threatened him. [3] After the victim

---

(bb) The plea was not entered or ratified by the defendant or a person authorized to so act in his behalf, or

(cc) The plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed, or

(A) The prosecuting attorney failed to seek or opposed the concessions promised in the plea agreement . . . .

2. In *State v. Buckalew*, 561 P.2d 289, 292 (Alaska 1977), we held that henceforth trial judges shall be totally barred from engaging in either charge or sentence bargaining. We clarified this holding in *Gordon v. State*, 577 P.2d 701 at 706 (Alaska, 1978), in which we stated:

Although we specifically reserve the question of whether *Buckalew* will require in the future an involuntary per se rule, we hold that the *Buckalew* prohibition on judicial involvement in plea negotiations does not ap-

ply retroactively to pleas taken prior to March 14, 1977. Any defendant who believes he was induced to enter a plea against his will because the trial judge participated in plea negotiations, must resort to the procedure and standards of proof for the withdrawal of a plea of guilty or nolo contendere as set forth in Criminal Rule 32(d).

Winkler entered his guilty plea prior to March 14, 1977.

3. The questioning by the court was as follows:

THE COURT: All right. Mr. Winkler, have you discussed this matter thoroughly with your attorney?

MR. WINKLER: Yes, sir.

THE COURT: Now, if at any point in the proceedings here you're uncertain what's going on and you want an opportunity to talk further with your lawyer, just say so. I'll give you whatever time you need. I don't want to crowd you here or I don't want you

had testified as to the factual circumstances surrounding the assault, the district attorney advised the court concerning the fact that at their conference the previous day, the four of them, Winkler, his attorney, the victim and the district attorney, had agreed that Winkler should have a psychiatric evaluation, and he asked that the court order an evaluation. Winkler's attorney joined in this request.

At the sentencing hearing, the court had before it the presentence report, two psychiatric evaluations and a psychological evaluation. The district attorney stated he had nothing to add to the presentence report, that "the prognosis [was] not good for Mr. Winkler's alcoholism, and I'm not making any particular recommendation because

I know Your Honor, that's . . . the court's problem and decision."[4] The court subsequently sentenced Winkler to serve five years.

At the evidentiary hearing on the Rule 32(d) motion to withdraw the guilty plea, Bryson testified that at no point did he give Winkler a guarantee of probation, but admitted in retrospect that he thought it "a very reasonable inference for someone to draw" from the tone of the plea negotiations. Bryson also testified that his recommendation to Mr. Winkler that he plead guilty was based on the fact that the district attorney spoke in terms of alcohol rehabilitation and not jail time. Bryson stated that he explained to Winkler that it was the policy of the district attorney in

to think we're trying to push you into something.
MR. WINKLER: No, sir.
THE COURT: I think you were sitting in court as I explained his rights to Mr. Wright, the gentleman that entered a plea just before you. You have all of the rights that he had. You have a right, number 1, to remain silent and if you plead guilty here you're going to be incriminating yourself. Now, you're under no obligation to do that. Do you understand that?
MR. WINKLER: Yes, sir.
THE COURT: You have the right, also to maintain your plea of not guilty and require the state to prove your guilt beyond a reasonable doubt. You don't have to prove you're innocent. Is that clear to you?
MR. WINKLER: Yes, sir.
THE COURT: By pleading guilty here this morning, Mr. Winkler, you're going to be giving up your right to a trial—trial by jury. You also are giving up that other right that I mentioned, the right of confrontation. That means the right to see the witnesses against you here in open court, under oath, to hear their testimony and includes your right to cross examine them, have your attorney or you ask them questions; and of course, you do have the right to present witnesses or to testify on your own behalf. Now on the question of guilt, you'll be giving up all those things if you plead guilty. That's all that there is left for me, is sentencing. Now, do you have any questions about that?
MR. WINKLER: No sir.
THE COURT: Do you understand the possible penalty for the crime of assault with a dangerous weapon?
MR. WINKLER: Yes, sir.
THE COURT: What do you understand it to be?
MR. WINKLER: Sir?

THE COURT: Do you know what the possible maximum penalty is in other words?
MR. WINKLER: I think 10—10 years, I think, sir.
THE COURT: All right. That's correct. I'm not saying, Mr. Winkler, that you're going to get a sentence of 10 years but I want you to understand the possible thing that could happen to you. For the crime of assault with a dangerous weapon you could receive a sentence of as much as 10 years, and again, under the new statutes, any sentence you receive, if it's a jail sentence, you'd be required to serve at least one-third of that before you'd be eligible for parole. Now, there have been no commitments here from the state, as I understand it, as far as any agreed recommendation or what sentence you will receive. Is that correct? Otherwise, has anyone made any promises to you, other than the agreement to drop Count II?
MR. WINKLER: No, sir.
THE COURT: Has anyone made any threats against you, Mr. Winkler, other than the threat of prosecution for this crime?
MR. WINKLER: (Inaudible reply).
THE COURT: Do you have any questions at all, either for me or for your attorney?
MR. WINKLER: No, sir.
THE COURT: All right. You previously entered on Count I a plea of not guilty. Is it your wish to withdraw that plea this morning?
Mr. WINKLER: Yes, sir.

4. Bryson had, prior to Winkler's plea, informed Winkler of the fact that this particular district attorney would not normally recommend a disposition, leaving that to the province of the court, but "would push for what he felt to be an appropriate disposition."

charge of the case not to make sentence recommendations and not to engage in plea bargains that included sentence recommendations. Although Bryson could not remember explaining the statutory maximum and minimum sentences to Winkler, he testified that it was his procedure normally to do so.

Further, at the hearing on the motion to withdraw, which was held before Judge Occhipinti, the court noted that in a series of letters from Winkler to the sentencing judge (Judge Burke), there was no mention by Winkler of any desire to withdraw his guilty plea. Additionally, Judge Occhipinti specifically found that no promises as to sentence were made to Winkler and concluded that Winkler should not be allowed to withdraw his guilty plea.[5]

We are not persuaded that the trial court erred in ruling that Winkler had failed to make out a case of "manifest injustice." We note that the situation before the court is quite similar to that described in *Pinedo v. United States*, 347 F.2d 142 (9th Cir. 1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 547, 15 L.Ed.2d 468 (1966). Pinedo also claimed that on appeal he should not have

been denied a post-sentencing opportunity to withdraw his plea because of manifest injustice based on contentions of an unfulfilled promise of probation and ineffective assistance of counsel. The Ninth Circuit, in affirming the lower court's denial of relief, initially noted:

[T]he allegations in Pinedo's motion for relief under Rule 32(d)[6] are rendered suspect by the fact that almost seven weeks elapsed between the day he pled guilty and the day he was sentenced, without any claim of innocence or misrepresentation of counsel, nor were any such claims made at the time of sentencing.[7]

In Winkler's case, not only was no claim raised during the 4½-month period between plea and sentencing, but the first notice of such a claim was brought to the court's attention only after one year from the date of the guilty plea.[8] As in *Pinedo*, we also think there is justification for the superior court's characterization of Winkler's claims as suspect based upon his failure to make any such claims until a considerable time after he had received a sentence calling for a substantial period of incarceration.[9]

A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

5. Winkler, at the hearing on his motion to withdraw, made several contentions that were not otherwise supported in the record or were clearly contradicted. Winkler contended that it was the trial court's suggestion that he get only psychiatric treatment, though the record does not so reflect. He also testified that his attorney had told him he would not receive imprisonment but would obtain psychiatric treatment for his alcohol problems. Bryson denied making any guarantee. Winkler further testified he did not remember either the district attorney stating that the bargain consisted only of dropping the second count nor that the court had advised him of his rights. These contentions were made after Winkler had a chance to review the transcript, and he intimates that the transcript was incomplete. The superior court, at the Rule 32(d) hearing, in weighing Winkler's credibility, found no support for his assertions and disbelieved his testimony. It is for the trial court to determine the credibility of witnesses. *See Taylor v. City of Fairbanks*, 436 P.2d 184 (Alaska 1968); *Beck v. State*, 408 P.2d 996, 997–98 (Alaska 1965). On review, Winkler asserts nothing to attack this finding of the trial court.

6. Rule 32(d), Federal Rules of Criminal Procedure, provides:

7. *Pinedo v. United States*, 347 F.2d 142, 146 (9th Cir. 1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 547, 15 L.Ed.2d 468 (1966).

8. The plea of guilty was entered on August 27, 1974. The sentencing occurred on January 14, 1975. The first notice to the court occurred in a motion of counsel to withdraw filed on August 28, 1975.

9. In *Pinedo v. United States*, 347 F.2d 142, 146 (9th Cir. 1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 547, 15 L.Ed.2d 468 (1966), the Ninth Circuit further observed:

Pinedo is not a simpleton nor a fool. The record shows him to be an educated, intelligent, articulate person, fully capable of handling difficult situations demanding reason and judgment.

Review of the record in the case at bar shows that it was not brought to the superior court's attention that Winkler possessed other than

In denying Pinedo's claim that there was a promise of probation, the Ninth Circuit pointed to the following facts:

> Alkow, [Pinedo's attorney] never once testified that any [promise of probation] had been made him by the United States Attorney. The strongest statement that Alkow could and did make was that the United States Attorney believed that the Pinedos would be placed on probation and that the United States Attorney did not propose to recommend imprisonment. If Alkow is to be believed at all, in making his representations to the Pinedos he did tell the Pinedos that he, as well as the United States Attorney, believed the Pinedos would get probation. Alkow insists that he told the Pinedos that if the judge wanted to impose a prison sentence he could do it.
>
> Pinedo himself did not claim that Alkow had said that the United States Attorney had *promised* probation, testifying only that Alkow had reported to him that the United States Attorney was 'favorable to probation.' While Pinedo claimed that he had . . . pled guilty because Alkow had promised that he and Mrs. Pinedo would get probation, as indicated, Alkow denied making any such flat promise.[10] (emphasis in original)

In the case at bar, Winkler was not promised by either the district attorney or his own counsel that he would receive probation. He knew that one of the two assault counts would be dismissed as a result of his plea. This was fully disclosed in court at the hearing on the change of plea, and the second count of the indictment was, in fact, dismissed. Winkler's subjective impression from the tone of pre-plea discussions is not sufficient to support his claim of manifest injustice. The superior court reminded Winkler, before accepting his plea, of its power to sentence him to maximum penalty of 10 years incarceration. Winkler acknowledged that he had been given no promises other than the dismissal of the second charge. In light of these circumstances, we do not find any basis, premised on any promise, express or implied, sufficient to show manifest injustice.

 Having concluded there were no unkept promises, we now consider Winkler's claim that he was denied effective assistance of counsel. The court in *Pinedo* cited with approval the following statements from *United States v. Parrino*, 212 F.2d 919, 921 (2nd Cir. 1954):

> [I]n criminal cases, the defendant's surprise as to the severity of sentence imposed after a plea of guilty . . . is not such manifest injustice as to require vacation of the judgment and . . . to withdraw a plea of guilty. . . . [S]urprise . . . which results from erroneous information received from the defendant's own attorney, at least without a clear showing of unprofessional conduct, is not enough. . . .
>
> [A]ny notion . . . that the Court guarantees the accuracy of information given by a member of its Bar to a client-defendant is obviously subject to the qualification that the Court represents not that members of its Bar are infallible but, at most, that they will function with due regard to their professional obligations.[11] (footnote omitted)

The standard in Alaska for effective assistance of counsel is as follows:

> Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Risher v. State*, 523 P.2d 421, 424 (Alaska 1974) (footnote omitted). We further noted in *Risher*:

> All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been

normal intelligence, or that he was incapable of fully understanding the various proceedings. Such a claim was not raised as part of the motion to withdraw and is not before us.

**10.** *Id.* at 146–47 (footnote omitted).

**11.** *Id.* at 147.

taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions.

*Id.* at 424. Specifically, Winkler contends that his counsel failed to consider other defenses and alternatives to pleading, inadequately advised him of the consequences of his plea and failed to inform the court of his dissatisfaction with the plea proceeding and the sentence which was imposed. No specific evidence was offered of any options foregone by Bryson. In light of the likely consequences of a trial, it cannot be concluded that Winkler's attorney provided less than ordinary skill in recommending acceptance of charge negotiations which resulted in the dismissal of one of the two felony counts. As to Winkler's contention that he was inadequately advised of the consequences of his plea, the record shows that the trial court explicitly advised Winkler in this regard, and his counsel testified it was his normal practice to so advise his clients. Thus, we conclude that the record does not show a failure on Bryson's part to fully inform Winkler of the consequences of his plea. Concerning any omission on Bryson's part to inform the court of his client's desire to withdraw his plea, we note that Winkler did not mention his desire in any of the numerous letters he sent to the superior court. Thus, we conclude that the superior court did not err in holding that Winkler had not proven a case of manifest injustice sufficient to warrant a withdrawal of his guilty plea on any of the grounds advanced.

Winkler's second contention is that the superior court failed to comply with provisions of Criminal Rule 11(c) and (d).[12] Specifically, Winkler alleges that the trial court did not adequately determine whether or not he understood the nature of the charge and was entering his plea voluntarily.

This is the first time that this issue has been raised in the case at bar. It was not raised at the evidentiary hearing on Winkler's withdrawal motion, or at the time of plea and sentencing. Normally this court will not address issues which were not presented to the trial court. *Lewis v. State*, 565 P.2d 846, 853 (Alaska 1977). We will, however, notice plain errors or defects even though they were not brought to the attention of the trial court if they affect substantial rights. Alaska R.Crim.P. 47(b).

In the recent case of *Lewis v. State*, 565 P.2d 846, 852 (Alaska 1977), we held that violations of Criminal Rule 11(c) are reversible only if they "affect substantial rights of the defendant." In this regard, we further stated that failure of the trial court strictly to comply with the requirement of Rule 11(c) would not be viewed as *per se* reversible error, but that the impact of any violation would be decided on a case-by-case basis. *Id.* at 851.

Prior to Winkler entering his plea, the superior court asked him the following question:

> THE COURT: All right. Count I alleges that you assaulted one Sonia Foss with a revolver on August 2, 1974. That

12. Rule 11(c) and (d), Alaska Rules of Criminal Procedure, provides:

(c) *Pleas of Guilty or Nolo Contendere.* The court shall not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and
(1) determining that he understands the nature of the charge; and
(2) informing him that by his plea of guilty or nolo contendere he waives his right to trial by jury or trial by a judge and the right to be confronted with the witnesses against him; and
(3) informing him:
(i) of the mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered, and

(ii) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, or to plead guilty.
(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire of the prosecuting attorney, defense counsel and the defendant himself to determine whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or his attorney.

charges you with assault with a dangerous weapon. To that charge how do you now plead, guilty or not guilty?

MR. WINKLER: Guilty, sir.

Also on the day before Winkler changed his plea, Sonia Foss had testified in court as to the circumstances of the assault during which Winkler was present in court. On this record, we do not find that there is anything approaching plain error in informing Winkler of the charge to which he pled.

Winkler further asserts that the court failed to determine adequately whether his plea was voluntary. Specifically, he alleges that the court made a meager inquiry into Winkler's understanding of the plea bargain. We think that the preferred procedure when complying with Criminal Rule 11(d) is for the trial court to have the defendant articulate in open court his understanding of any plea bargain, if one existed.[13] In this case, the court was informed by the district attorney of the bargain:

> THE COURT: . . . I gather you . . . did get together yesterday and you worked out . . . some sort of negotiated plea?
>
> MR. TALBOT: Yes, we have, Your Honor. As I understand it, the defendant wishes to change his plea to Count I and if he enters a plea of guilty to Count I it's my intention to dismiss Count II. Other than that, it will be open sentencing.

Neither Winkler nor his attorney objected to this description of the bargain. After the bargain was put on the record, the court immediately began an extensive inquiry to determine the voluntariness of Winkler's plea.[14] As part of this examination, the court specifically inquired as to whether Winkler had an understanding of the bargain differing from that articulated by the district attorney.

> THE COURT: . . . Now there have been no commitments here from the state, as I understand it, as far as any agreed recommendation or what sentence you will receive. Is that correct? Otherwise, has anyone made any promises to you, other than the agreement to drop Count II?
>
> MR. WINKLER: No, sir.

Although as we have said, the preferred procedure would have been for the court to ask the defendant to detail his understanding of the bargain, we do not find from our review of the record that the superior court failed substantially to comply with Criminal Rule 11(d).[15]

The superior court's denial of Winkler's motion to withdraw his guilty plea is Affirmed.

BURKE, J., not participating.

---

**13.** *See Jones v. United States,* 423 F.2d 252, 256 (9th Cir. 1970), *cert. denied,* 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1970).

**14.** *See* note 3, *supra,* for text of the entire voir dire.

**15.** A defendant's responses to a Criminal Rule 11 inquiry cannot be considered conclusive evidence that no plea bargaining has occurred or that the extent of the bargain has been put on the record. *See Walters v. Harris,* 460 F.2d 988, 993 (4th Cir. 1972), *cert. denied,* 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973).