**David G. GLADDEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8710.

Court of Appeals of Alaska.

April 15, 2005.

David G. Gladden, pro se, Dillingham.

John W. Wolfe, Assistant District Attorney, Dillingham, Leonard M. Linton Jr., District Attorney, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

**OPINION**

COATS, Chief Judge.

David G. Gladden was charged with driving with a suspended license.' At his arraignment, and in subsequent hearings over the

---

**1.** AS 28.15.291(a)(1).

next six months, Gladden declined to request appointed counsel, instead asserting that he wanted to hire private counsel. However, despite repeated continuances and warnings that he would have to proceed *pro se* if he did not find an attorney by the trial date, Gladden showed up at trial unrepresented. The district court refused to grant another continuance, and Gladden proceeded *pro se*. At trial, Gladden did not testify or present any evidence relevant to the charge against him. Instead he repeatedly asserted that the district court had no jurisdiction to try him because he was not represented by an attorney. Gladden was convicted. On appeal, he claims that his right to counsel was violated because he was forced to represent himself at trial.

By stubbornly refusing to request appointed counsel or to take the steps necessary to hire private counsel, Gladden impliedly elected to proceed *pro se*. However, the record does not unequivocally show that Gladden knowingly and intelligently waived his right to counsel. For this reason, we reverse Gladden's conviction.

*Facts and proceedings*

On the afternoon of February 4, 2003, Dillingham Police Officer Joshua Mize saw Gladden driving down Kanakanak Road in Dillingham. From his prior contacts with Gladden, Officer Mize knew that Gladden's driver's license was suspended. Officer Mize followed Gladden's vehicle and contacted him in his driveway. When Officer Mize asked to see Gladden's driver's license, Gladden produced an international driving permit issued in Costa Rica. Gladden admitted that his Alaska driver's license was suspended.

Gladden was charged with driving with a suspended license.[1] At trial, Officer Mize testified to the above facts, and the State introduced a certified copy of Gladden's driving record, which showed that his license was suspended. Gladden did not testify or present any evidence relevant to the charge against him. Instead, he repeatedly objected that the court had no jurisdiction to try him because he was "without the assistance of

counsel under the Sixth Amendment." The jury convicted Gladden, and he appeals.

### Was Gladden's right to counsel violated?

Gladden argues that his conviction is void for lack of jurisdiction because he had no attorney at trial and did not knowingly and intelligently waive his right to an attorney. Resolving this claim requires a review of the pre-trial hearings at which the district court addressed Gladden's failure to hire an attorney and his refusal to fill out the forms necessary to qualify for court-appointed counsel.

### The relevant pre-trial proceedings

Gladden was arraigned on February 19, 2003, before Magistrate Monte Brice. Magistrate Brice informed Gladden of the charge against him, recounted the facts underlying that charge, and told him what penalties he could face if he was convicted. Magistrate Brice then explained the elements the State had to prove, and informed Gladden of his various rights, including his right to an attorney. When asked if he understood those rights, Gladden said he "didn't hear them"; he also said that he had no questions about his rights. Gladden said he could not afford a lawyer, but that he did not want to apply for court-appointed counsel, and that he would try to "contract with one." Gladden refused to enter a plea, so Magistrate Brice entered a "not guilty" plea on his behalf and scheduled a representation hearing for March 17, calendar call for April 15, and trial for April 21.

At the March 17 hearing, Gladden said he had failed to hire an attorney, and he gave Magistrate Brice a copy of a proposed contract he had mailed to various attorneys. Magistrate Brice told Gladden that he could either hire an attorney or request a public defender, and he scheduled a second representation hearing for March 28.

At the March 28 hearing, Gladden said he still had not found an attorney willing to sign his contract. Magistrate Brice reminded Gladden that he could apply for court-appointed counsel, but Gladden declined. Magistrate Brice did not schedule another representation hearing.

At the April 15 trial call, Gladden told Judge Fred Torrisi that he had not applied for court-appointed counsel and that he had not found an attorney willing to sign his contract. Gladden asked Judge Torrisi why no attorney would sign his contract, and Judge Torrisi told him that he had not read the contract and that he did not get involved in contracts with private attorneys. Judge Torrisi asked Gladden if he wanted a continuance, but Gladden did not respond. Judge Torrisi continued trial call until April 21, the following Monday. On April 17, the court issued a Notice and Order advising Gladden that he would not receive a continuance based on the fact that no lawyer was willing to respond to the "request for assistance of counsel" he had filed with the district court.

At the April 21 trial call, Gladden listed the names of eight attorneys he claimed he had mailed his contract to, but said none of them had responded. Judge Torrisi cautioned Gladden that his approach to hiring an attorney seemed "ill-designed to actually get a lawyer to represent you," but he added that Gladden was "free to do it however you want." Gladden did not ask for a continuance, and Judge Torrisi kept the case on the April 23 trial schedule.

On April 23, Gladden asserted his right to a speedy trial under Rule 45, but also stated that he had not been able to hire an attorney and was not prepared to go to trial without one. Judge Torrisi offered to grant Gladden a continuance if he waived his right to a speedy trial, but said he was not going to delay trial until Gladden found an attorney who would sign his contract; Judge Torrisi noted that he would not sign Gladden's contract if he were an attorney. Gladden continued to insist that he did not understand the charges against him, and that he could not go to trial without an attorney. Judge Torrisi urged Gladden to call some lawyers on the telephone because he was "not going to hear at the last minute that you don't have a lawyer because they wouldn't sign this contract." Judge Torrisi waived Gladden's speedy trial right and continued trial call until August 4.

At the August 4 trial call, Gladden still did not have an attorney. Gladden acknowledged that he had not called any attorneys, but instead had continued to mail out his contract. Judge Torrisi continued trial call until August 8 and told Gladden there would be no more continuances. He admonished Gladden to "hire somebody the traditional way or be prepared to do it yourself." Judge Torrisi also issued a Memorandum and Order, which read in part:

Since my order of 4/17/03, Mr. Gladden has continued to file various documents. He has not asked for appointed counsel, and argues that he can't retain counsel because no-one will respond to his certified mailings, which contain a contract he wants counsel to sign. It seems to me, and I have said this on the record, that this method of securing counsel is extremely unlikely to result in his actually obtaining a lawyer, especially since the contract contains terms relating to the type of court, official bonds and seals, a "true Civil Commission" and other provisions which might seem foreign and irrelevant to the usual criminal lawyer.

At the August 8 trial call, Gladden had subpoenaed various attorneys, apparently to question them about their qualifications to provide assistance under the Sixth Amendment. After allowing Gladden to question one of these attorneys briefly, Judge Torrisi quashed the subpoenas and excused the witnesses.

On August 11, the first day of trial, Gladden argued that the court had no jurisdiction to try him because he still had no attorney. Judge Torrisi refused to delay the trial. The jury convicted Gladden based on Officer Mize's testimony and a copy of Gladden's driving record, which showed that his license was suspended.

*Did Gladden knowingly and intelligently waive his right to counsel?*

■ Gladden was charged with a misdemeanor and faced a possible one-year jail term. Therefore, he was entitled to the assistance of counsel, and his conviction is invalid unless he knowingly and intelligently waived that right.[2] We independently review the record to determine if a waiver of counsel was knowing and intelligent.[3]

In *James v. State*,[4] we discussed the type of inquiry that is required before a court may grant a defendant's request to represent himself in a criminal case:

Except in the most unusual circumstances, a trial in which one side is unrepresented by counsel is a farcical effort to ascertain guilt. Thus, once a defendant has clearly and unequivocally declared his or her intention to appear pro se, the trial judge must conduct a through inquiry into the circumstances surrounding the assertion.... This inquiry should be incorporated into the trial record ... and should include: advising the defendant of the right to counsel and the importance of having counsel; warning the defendant of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'"; and inquiring into the defendant's educational background, previous experience with criminal trials, and general competence.... [T]he defendant must possess the mental competence to understand the dangers and ramifications of self-representation.[5]

■ Before permitting a defendant to proceed *pro se*, the trial judge must explain the advantages of legal representation in "some detail."[6] We have cautioned courts against relying on a general explanation of the right to counsel in lieu of objective indica-

---

2. See *Ledbetter v. State*, 581 P.2d 1129, 1130–31 (Alaska 1978); *O'Dell v. Anchorage*, 576 P.2d 104, 106–08 (Alaska 1978); *Gregory v. State*, 550 P.2d 374, 378 (Alaska 1976); *Alexander v. Anchorage*, 490 P.2d 910, 913 (Alaska 1971).

3. *McIntire v. State*, 42 P.3d 558, 561 (Alaska App.2002).

4. 730 P.2d 811 (Alaska App.1987), *modified on rehearing*, 739 P.2d 1314 (Alaska App.1987).

5. *Id.* at 814 n. 1 (quoting the Commentary to 1 ABA Standards for Criminal Justice § 6–3.6, at 6.39–40 (2d. ed.1982)).

6. *Id.* at 813–14 (citations omitted).

tions that the defendant appreciated what he was giving up by waiving his right to counsel in that particular case.[7] We will excuse an on-record inquiry only if "the record as a whole unequivocally demonstrate[s] a full awareness ... of the benefits of counsel and the dangers of self-representation." [8]

None of the required inquiries appears on the record in this case; nor does the record as a whole unequivocally demonstrate that Gladden was aware of the hazards of proceeding *pro se*. Magistrate Brice and Judge Torrisi asked Gladden if he wanted to apply for a public defender and, when he declined, granted numerous continuances to give him time to hire private counsel. Gladden viewed the court system arraignment video, which explains the right to counsel and the benefits of counsel in general terms. Magistrate Brice also told Gladden at arraignment that he had the right to counsel, and explained the nature of the charge and the elements the State had to prove. But once it became clear that Gladden was unlikely to hire an attorney, and after Judge Torrisi warned Gladden that trial would proceed whether he hired one or not, Judge Torrisi never explained to Gladden what an attorney could do, warned him of the problems he could face in defending himself, or asked him if he understood the risks of proceeding *pro se*. Nor did Judge Torrisi ask about Gladden's educational background or his prior experience with the criminal justice system.

We recognize that this was not a complex case. Gladden was charged with one misdemeanor offense of driving with a suspended license. The State's entire case consisted of a copy of Gladden's driving record and Officer Mize's testimony that he had seen Gladden driving. But our supreme court has required a knowing and intelligent waiver of counsel even for minor traffic infractions, while recognizing that the duty of inquiry

may be minimal in such cases.[9] Moreover, we cannot speculate about the defenses Gladden might have asserted if he had received the advice of an attorney.

The record suggests that Gladden understood the value of an attorney, at least in general terms. Gladden gave the court copies of several United States Supreme Court decisions that address the right to counsel. Among these was a copy of the Supreme Court's landmark decision in *Johnson v. Zerbst*,[10] which declared "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." [11] But again, absent some inquiry by the trial court, we cannot know whether Gladden read the relevant portions of those decisions, or understood what they meant in the context of his case. A knowing and intelligent waiver of the right to counsel cannot be inferred solely from the vociferousness of Gladden's assertion of that right. As observed in the concurring opinion in *James:*

> Many misinformed and uninformed people, mistakenly believing themselves to be adequately informed, hold strong views. Often, though certainly not always, such views can be changed by the giving of thorough and accurate advice.[12]

We have no doubt that Gladden impliedly elected to proceed *pro se* by refusing to take the steps necessary to hire an attorney after Judge Torrisi warned him that trial would go forward whether he had one or not. But that circumstance did not relieve the trial court of its obligation to ensure that Gladden's decision to forego the assistance of counsel was knowing and intelligent. A number of jurisdictions have reached this conclusion in cases involving similar facts.[13]

7. *McIntire*, 42 P.3d at 562; *see also O'Dell*, 576 P.2d at 108.

8. *Evans v. State*, 822 P.2d 1370, 1375 (Alaska App.1991).

9. *O'Dell*, 576 P.2d at 105–06, 108; *Alexander*, 490 P.2d at 915–16.

10. 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

11. *Id.* at 462–63, 58 S.Ct. at 1022.

12. *James*, 730 P.2d at 815 (Bryner, C.J., concurring).

13. *See, e.g., United States v. Allen*, 895 F.2d 1577, 1578–79 (10th Cir.1990) (although trial court ruled that defendant's refusal to accept appointed counsel and failure to hire counsel were part of a ploy to postpone trial and were a waiver by

For instance, in *State v. Weiss*,[14] an Ohio case, the defendant continually maintained that he wanted private counsel, and hired and fired several attorneys in the seven months between his arraignment and trial.[15] The court gave him four continuances so he could hire an attorney and, when he failed to do so, warned him that trial would go forward whether he had an attorney or not.[16] On the day of trial, the defendant appeared without an attorney, but still insisted that he could not represent himself.[17] The trial court refused to grant any more delays, instead requiring the defendant to proceed *pro se*, with an appointed attorney serving as an advisor.[18]

The Ohio Court of Appeals reversed Weiss's conviction, explaining:

> A valid waiver of counsel can be either express or implied from the circumstances of the case. For example, the right to have counsel of one's own choice may be deemed to be waived by a defendant who is financially able but fails to retain counsel in an attempt to delay or otherwise frustrate the judicial process.

> However, "[i]n order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that

right." Even when the waiver of counsel is implied by the defendant's purported delaying tactics, a pretrial inquiry as to the defendant's knowing and intelligent waiver of the right must be made. "A court is under no less obligation to ensure that waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly."

. . .

> Such an inquiry must be made, even when the defendant is seemingly engaging in delay tactics, because such a delaying strategy by the defendant is often employed where the defendant does not understand the crucial role of counsel in criminal cases. If the defendant then continues with his "cat and mouse" game with the court, the court may properly proceed with trial with the knowledge that the defendant knows the gravity of his decision to proceed *pro se*.[19]

Similarly in *Young v. State*,[20] the Florida Supreme Court found reversible error where a trial court required a defendant to proceed *pro se* after he refused to accept the services of his third appointed counsel, because the trial court never conducted an on-record inquiry concerning the advantages of an attor-

---

conduct of the right to counsel, appellate court reversed conviction because the trial court made no inquiry to ensure that the waiver was knowing and intelligent); *State v. Young*, 626 So.2d 655, 657 (Fla.1993) (where trial court failed to conduct on-record inquiry, defendant did not waive right to counsel even though he deliberately abused that right by repeatedly seeking the removal of his appointed counsel); *Poynter v. State*, 749 N.E.2d 1122, 1128–29 (Ind.2001) (defendant did not knowingly waive right to counsel by repeatedly telling the court he would hire an attorney and showing up at trial without an attorney where the court did not advise him of the hazards of self-representation); *Fitzgerald v. State*, 254 Ind. 39, 257 N.E.2d 305, 311–12 (1970) (court erred by requiring the defendant to proceed *pro se* without a knowing and intelligent waiver of the right to counsel even though defendant's own conduct for one and one-half years was entirely to blame for his failure to have assistance of counsel at his trial); *State v. Weiss*, 92 Ohio App.3d 681, 637 N.E.2d 47, 49–50 (1993) (an inquiry to determine if the defendant's waiver of counsel is knowing and intelligent must be made even when the defendant is engaging in delay tactics); *Trevino v. State*, 555 S.W.2d

750, 752 & n. 1 (Tex.Crim.App.1977) (defendant did not knowingly waive right to counsel even though he attempted to manipulate right to counsel to delay trial where he was not made aware of the dangers and disadvantages of self-representation); *Tacoma v. Bishop*, 82 Wash.App. 850, 920 P.2d 214, 219 (1996) (court erred in requiring defendant to proceed *pro se* without warning him of the hazards of self-representation where defendant's dilatory conduct was not so serious to warrant a complete forfeiture of his right to counsel).

**14.** 92 Ohio App.3d 681, 637 N.E.2d 47.

**15.** *Id.* at 48.

**16.** *Id.* at 48–49.

**17.** *Id.*

**18.** *Id.*

**19.** *Id.* at 49–50 (citations omitted).

**20.** 626 So.2d 655.

ney and the hazards of self-representation.[21] The Florida high court noted that "[w]hile a trial judge may presume that an abuse of the right to assistance of counsel can be interpreted as a request by a defendant to exercise the right of self-representation, a defendant may not be presumed to have waived the separate right to assistance of counsel" unless the court conducts an on-record inquiry to ensure that the defendant's waiver was knowing and intelligent.[22]

In extreme cases, some courts have found that a defendant forfeited the right to counsel even though the record was silent as to whether the defendant knowingly and intelligently waived that right.[23] But we need not decide whether to adopt the forfeiture doctrine in this context as a matter of Alaska law because we conclude that Gladden's conduct was not egregious enough to amount to a complete forfeiture of his right to counsel.

Because we are reversing Gladden's conviction on this ground, his claims that he was also denied his right to counsel at arraignment and at sentencing are moot. Gladden's other claims, to the extent that they are preserved, are meritless. He argues that the district court had no authority to decide a case such as his, but the legislature has expressly granted the district court jurisdiction over misdemeanor offenses.[24] Gladden

also asserts that the Board of Governors of the Alaska Bar Association has no authority to certify attorneys to practice law in this state, and that all the certificates issued by the supreme court are bogus. Although Gladden evidently believes there is no attorney in Alaska authorized and competent to represent him, we note that it is the State of Alaska that decides who is qualified to practice law in this state. The legislature has authorized the Board of Governors to establish a program for the certification of attorneys[25] and to administer a bar exam.[26] Moreover, the Alaska Supreme Court has stated that it has "inherent and final power and authority to determine the standards for admission to the practice of law" in this state.[27]

### Conclusion

Because the record in this case does not unequivocally show that Gladden knowingly and intelligently waived his right to counsel, we reverse his conviction.

REVERSED.

**21.** *Id.* at 656.

**22.** *Id.* at 657.

**23.** *See, e.g., United States v. Thomas,* 357 F.3d 357, 363 (3rd Cir.2004) (defendant forfeited his right to counsel where he threatened his attorney, was verbally abusive to him, tore up his correspondence, refused to cooperate in producing a witness list, hung up on him during a telephone conversation, attempted to force him to file frivolous claims, and engaged in this sort of misconduct with three other attorneys); *United States v. Leggett,* 162 F.3d 237, 240, 250 (3rd Cir.1998) (defendant forfeited right to counsel where he punched lawyer, knocked him to the ground, then began to choke, scratch and spit on him); *United States v. Travers,* 996 F.Supp. 6, 17 (S.D.Fla.1998) (finding forfeiture as a result of the defendant's "persistently abusive, threatening, and coercive" dealings with his attorneys and noting that the defendant had been repeatedly warned that his failure to cooperate could result in a finding of forfeiture); *United States v. McLeod,* 53 F.3d 322, 325–26 (11th Cir.1995) (defendant forfeited his right to counsel where he was abusive toward his attorney, threatened to

harm him and sue him, and asked him to engage in unethical conduct). *But see King v. Superior Court,* 107 Cal.App.4th 929, 132 Cal.Rptr.2d 585, 596 (2003) (noting that most instances of even serious misconduct by a defendant can be dealt with by measures less severe than forfeiture of counsel); *State v. Boykin,* 324 S.C. 552, 478 S.E.2d 689, 690, 692 (S.C.App.1996) (defendant did not forfeit right to counsel based on one instance in which he "cussed" and "came after" his attorney). *See generally United States v. Goldberg,* 67 F.3d 1092, 1099–1101 (3rd Cir. 1995) (explaining in detail the distinction between express waiver, waiver by conduct, and forfeiture of the right to counsel).

**24.** Alaska Const. art. IV, § 1; AS 22.15.060(a)(1)(A).

**25.** AS 08.08.080.

**26.** AS 08.08.201.

**27.** *Application of Houston,* 378 P.2d 644, 645 (Alaska 1963).