**Lde CRANE, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. A–9291.**

Court of Appeals of Alaska.

Aug. 12, 2005.

Rehearing Denied Sept. 9, 2005.

---

Lde Crane, in propria persona, Wasilla, for the Petitioner.

Richard K. Allen, Assistant District Attorney, and Roman J. Kalytiak, District Attorney, Palmer, and David W. Márquez, Attorney General, Juneau, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

The petitioner, Lde Crane, is currently charged with driving while under the influence, AS 28.35.030(a), and refusal to take a breath test, AS 28.35.032(f). He is awaiting trial in the district court. In this petition, Crane asserts (correctly) that he is entitled to the assistance of counsel in defending himself against these charges. But Crane insists that he can not obtain the assistance of counsel because there are no "counselors at law" in Alaska.

Crane contends that there is a legal distinction between "counselors at law" and "attorneys"—and that there are no "counselors at law" in Alaska because the Alaska Bar Association and the Alaska Supreme Court only license "attorneys". Crane further asserts that, because he is unable to obtain the assistance of a counselor at law, the courts of Alaska have no jurisdiction over him. *See Johnson v. Zerbst,* 304 U.S. 458, 467–68, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938) (holding that a deprivation of the right to counsel is equivalent to a lack of jurisdiction).

In the alternative, even assuming that the attorneys properly licensed by the Alaska Bar Association and the Alaska Supreme Court qualify as "counselors at law", Crane argues that the Bar Association and the Supreme Court lost their power to license attorneys in 1976. Crane bases this argument on the fact that, in 1976, the Alaska Legislature repealed AS 08.08.200—a statute that specified the procedure for admission to the practice of law—and failed to enact an equivalent statute in its place.

As we explain here, the common law did in fact distinguish between "attorneys" and "counselors at law", but this distinction no longer exists under Alaska law. Instead, attorneys perform both functions. We therefore reject Crane's assertion that there are no "counselors at law" in Alaska.

And it is true that, in 1976, the legislature repealed the statute that specified the procedure for admission to the practice of law in this state. However, in the same 1976 session law, the legislature gave rule-making authority to the Board of Governors of the Alaska Bar Association, so that the admission procedure could be specified by court rule—which has been done. We therefore conclude that, even after the legislative amendments of 1976, the Board of Governors and the Alaska Supreme Court properly continue to certify and admit applicants to the practice of law.

### Underlying facts

Crane is charged with driving while under the influence and refusing to take the breath

test. At his arraignment on November 23, 2004, Crane refused to enter a plea or even listen to the court's explanation of his situation and his legal rights—because he protested that he could not proceed without "assistance of counsel".

Crane explained his position in more detail when he appeared in front of District Court Judge William L. Estelle for a pre-trial hearing on January 10, 2005. Crane told Judge Estelle that he "need[ed] assistance of counsel". But when the judge asked Crane if he was going to "hire a lawyer", Crane replied that he needed the "assistance of counsel". Crane's reply led to the following exchange:

> *The Court:* Would you define for us, in 25 words or less, what "assistance of counsel" is, if it's not a lawyer?
>
> *Crane:* To be truthful with you, I don't know what the law is [on this point], and I don't know what [the] definition of "assistance of counsel" is . . . . That's why I need [the] assistance of counsel.

Hearing this, Judge Estelle tried to assure Crane that "counsel" meant the same thing as "lawyer":

> *The Court:* [A lawyer is someone] that's licensed to practice [law] in the State of Alaska, [someone who has been] to college, [to] law school, and [has passed] the bar exam. That's a lawyer; that's assistance of counsel. [So,] do you intend to hire a lawyer?
>
> *Crane:* No. I'm . . . trying to find assistance of counsel [who] will assist me here, . . . not "represent" me. . . . I'm not indigent, and I do not want anybody to appoint me a lawyer. [But] I want assistance of counsel to assist me, and that's it. I'm not—no more debate.
>
> *The Court:* But . . . "assistance of counsel" means a lawyer. . . .
>
> *Crane:* I have [it] right here: assistance of counsel, under the Sixth Amendment. [It] does not say "attorney". No more debate. I don't want to discuss it here, sir.
>
> . . .
>
> This is the book I'm reading, and it says that I have the right, under the Sixth Amendment, of assistance of counsel. . . . And it doesn't say "attorney" or "lawyer".

After Judge Estelle heard this explanation of Crane's position, he told Crane:

> *The Court:* You can hire a lawyer or not hire a lawyer. But you need to be on notice that "assistance of counsel" in the State of Alaska means somebody who is licensed to practice law. That's what assistance of counsel means in this state. . . . [Y]ou seek to draw a distinction between "assistance of counsel" and a "lawyer", and an "attorney" or a "counselor at law", or whatever else you want to call a lawyer, . . . but it makes no difference, legally. "Assistance of counsel", "counselor at law", "attorney at law", "lawyer"—they're all the same thing. . . . [So] you can represent yourself, . . . or you can hire somebody to represent you.
>
> . . .
>
> But if you do not hire a lawyer, you are going to be representing yourself, and you'll be held to the same rules [in presenting your case] as lawyers are.

Crane now seeks appellate review of Judge Estelle's ruling. He renews his argument that "attorneys" are not "counsel" for purposes of the right to the assistance of counsel under the Sixth Amendment to the United States Constitution. In addition, Crane argues in the alternative that even if a properly admitted attorney would qualify as "counsel" for these purposes, there have been no properly admitted attorneys in Alaska for the past thirty years—because, in 1976, the Alaska Legislature withdrew the Alaska Bar Association's and the Alaska Supreme Court's right to certify and admit applicants to the practice of law.

*Crane's argument that he is entitled to the assistance of a counselor at law—and that, while there may be "attorneys at law" in Alaska, there are no "counselors at law"*

■ The terms "attorney" and "counselor" originally did have differing meanings. Both words come from Old French, the language spoken by the Normans who conquered England in the eleventh century.

The word "attorney" first appeared in Anglo–French writing in the early 1300's. At that time, it was written *aturné* or *atorné*.[1]

---

1. See *www.etymonline.com*, "Attorney".

This word is the past participle—in English, the "-ed" form—of the verb *aturner* (or *atorner*). The verb *aturner* literally meant "to turn to", in the sense of turning to someone for aid or assistance. It then came to mean "to turn over to", in the sense of entrusting one's affairs to another person. Thus, by the time the word showed up in Anglo–French writing, *aturner* (or *atorner*) meant "to assign or appoint someone to act as your agent or representative"—for any purpose, not just lawsuits. And the word *aturné* (or *atorné*) meant the person who was assigned or appointed.[2]

We still use the word "attorney" in this broader sense when we speak of giving someone a "power of attorney" to transact business or make decisions on our behalf. And the person to whom we give a power of attorney is still called an "attorney"—although we use the phrase "attorney in fact" because, nowadays, the word "attorney" standing by itself means a legal professional.

In early English law, a "private attorney" was someone who was appointed (usually, hired for pay) to act for another person in any sort of business—including, but not limited to, legal affairs. On the other hand, a "public attorney" or an "attorney at law" was a person who was licensed to represent people in the courts—but not "represent" in the full sense that we would understand today.

An "attorney at law" could investigate and prepare cases for court, and could attend court proceedings as the personal representative of the person whose interests were at stake. But the attorney could not actually plead the case (*i.e.*, could not participate as an advocate at the hearing or trial). That job was assigned to the "counselor" or "counsel"—the legal professional now known as a "barrister" in England.

The word "counsel" (used as a noun rather than a verb) comes from the Old French *counseil*, which meant a "plan or opinion". Thus, a counselor was a person who formulated a plan or rendered an opinion.

Again, we still use the word "counselor" in this broader sense. But the word also came to mean a professional legal advocate—a person who was versed in the law and whose profession was to plead cases in the courts. The terms "counselor" and "counsel", used in this sense, first appear in Anglo–French writing in the late fourteenth century.[3]

This common-law distinction between "attorney" and "counsel" is described by William Blackstone in his *Commentaries on the Laws of England* (First Edition, 1765–69), Book III, Chapter 3, pp. 25–28:[4]

It is also usual in the superior courts to have attorneys, and advocates or counsel, as assistants.

An attorney at law ... is one who is put in the place, stead, or turn of another, to manage his matters of law. Formerly every suitor was obliged to appear in person, to prosecute or defend his suit, ... unless by special license under the king's letters patent. This is still the law in criminal cases. And [an insane person] cannot to this day appear by attorney, but [must appear] in person; for he hath not discretion to enable him to appoint a proper substitute.... But, as in the Roman law ..., so with us, upon the same principle of convenience, it is now permitted ... by divers antient statutes, whereof the first is statute West. 2. c. 10, that attorneys may be made [*i.e.*, appointed] to prosecute or defend any action in the absence of the parties to the suit. These attorneys are now formed into a regular corps; they are admitted to the execution of their office by the superior courts of Westminster-hall; and are in all points officers of the respective courts in which they are admitted: and, as they have many privileges on account of their attendance there, so they are peculiarly subject to the censure and animadversion of the judges. No man can practise as an attorney in any of those courts, but such as is admitted and sworn an attorney of that particular court.... So early as the statute 4 Hen. IV. c. 18[,] it

---

2. *Id.*

3. *See www.etymonline.com,* "Counsel (noun)".

4. The complete text of the first edition of Blackstone's *Commentaries* is available online from the Yale University Law School's "Avalon Project". *See http://www.yale. edu.lawweb/avalon /blackstone/blacks to.htm.*

was enacted, that attorneys should be examined by the judges, and none admitted but. such as were virtuous, learned, and sworn to do their duty. And many subsequent statutes have laid them under farther regulations.

Of advocates, or (as we generally call them) counsel, there are two species or degrees[:] barristers, and serjeants. The former are admitted after a considerable period of study, or at least [employment], in the inns of court; and are in our old books stiled apprentices, *apprenticii ad legem,* being looked upon as merely learners, and not qualified to execute the full office of an advocate till they were sixteen years standing; at which time, according to Fortescue, they might be called to the state and degree of serjeants, or *servientes ad legem.* How antient and honourable this state and degree is, the form, splendor, and profits attending it, have been so fully displayed by many learned writers, that they need not be here enlarged on. I shall only observe, that serjeants at law are bound by a solemn oath to do their duty to their clients: and that by custom the judges of the courts of Westminster are always admitted into this venerable order, before they are advanced to the bench.... From both these [groups] some are usually selected to be his majesty's counsel learned in the law; the two principal of whom are called his attorney, and solicitor, general.... A custom has of late years prevailed of granting letters patent of precedence to such barristers, as the crown thinks proper to honour with that mark of distinction: ... These [barristers] ... rank ... with the king's counsel, and together with them sit within the bar of the respective courts: but receive no salaries [from the crown], and are not sworn [in personal allegiance to the crown]; and therefore are at liberty to be retained in causes against the crown. And all other serjeants and barristers indiscriminately (except in the court of common pleas

where only serjeants are admitted) may take upon them the protection and defence of any suitors, whether plaintiff or defendant; who are therefore called their clients, like the dependants upon the antient Roman orators.

In the eighteenth and nineteenth centuries, the word "attorney" became a term of contempt in England [5]—so much so that Parliament abolished the term in the Judicature Act of 1873.[6] Thus, in England, the people who perform the traditional role of attorneys at law are now known as "solicitors".

However, the term "attorney" survived in America. Originally, in American law, the word "attorney" had the same limited meaning as under the English common law—"personal representative". This older meaning is illustrated in an 1833 opinion of the Pennsylvania Supreme Court, *Mercer v. Watson,* 1 Watts 330, 1833 WL 3318:

> [P]arties are technically and properly said to appear [in] suits by attorney and not by counsel.... Counsellor and counsel are terms familiar to the law. [The] province [of these professionals] is not simply to appear [in] actions [as the personal representative of the party], [rather] it is to conduct the suit by their advice and advocacy through all of its progress and in the difficult emergencies [nowadays, we would say "developments" or "contingencies"] of a trial by jury and of arguments before the court.
>
> ...
>
> In England, attorneys, and counsel or barristers, constitute separate and distinct orders of the legal profession; and a barrister or counsellor cannot act as an attorney, unless he first apply to his society to be disbarred. Attorneys at law, properly so called, were introduced by the statute of Westminster, 2 C. 10, by which suitors were first permitted to appoint agents in their place, stead or turn, to manage their matters of law in their absence; [before]

---

5. For example, in James Boswell's biography of Samuel Johnson (*Life of Johnson,* 1791), the following passage appears: "Much enquiry having been made concerning a gentleman, who had quitted a company where Johnson was, and no information being obtained; at last Johnson observed, that 'he did not care to speak ill of any man behind his back, but he believed the gentleman was an attorney.'" *Life of Johnson,* Vol. 2, p. 36. (It should be noted that Boswell was himself an attorney.)

6. See *www.etymonline.com,* "Attorney".

which, parties were obliged to appear in person to prosecute or defend their suits.... Yet it seems, says Stephens, author of the learned and elegant treatise on the principles of pleading, that this is only to be understood [as] appearance by attorney, and not the conduct of the suit after appearance [is] once made.... [P]leaders, counsel and advocates ... [meaning] persons learned in the law, and skilful in pleading causes, [were recognized in England] as early as the reign of William Rufus. [William II, who reigned from 1087 to 1100] Appearance by attorney, and appearance by counsel in a cause, are distinctly different: the former being the substitution of a legal agent for the personal attendance of the suitor; the latter, the attendance of an advocate, without whose aid, neither the party attending [personally], nor the attorney [attending] in his stead, could safely proceed.

*Mercer v. Watson*, 1833 WL 3318 at *13, *17.

Nevertheless, even at the time of *Mercer v. Watson*, the lines between "attorney" and "counselor" were blurring in American legal practice—because the same legal professionals normally performed both functions.

As indicated by the passage from Blackstone, and as indicated by the Pennsylvania court's opinion in *Mercer v. Watson* (1833 WL 3318 at *17), both "attorneys" and "counsellors at law" were regulated and licensed by the government. Moreover, the opinion in *Mercer v. Watson* shows that, by the 1830's, American law had already departed from the English rule described in *Mercer v. Watson*—the rule that the office of "attorney" was completely separate from the office of "counselor", and that no counselor or barrister could take on the role of attorney without first resigning his office (asking to be "disbarred"). Rather, in America (or, at least, in Pennsylvania in 1833), "counsel are always attorneys, and [under our rules] members of the bar are admitted to practice ... either as attorneys or counsellors". *Mercer v. Watson*, 1833 WL 3318 at *17.

In fact, the Pennsylvania court noted that the formal procedures that distinguished "attorneys" from "counselors" were breaking down and falling into disuse. The court discussed the fact that, under Pennsylvania law, a counselor who was also functioning as the attorney in a case—that is, a counselor whose client was absent from court, so that the counselor was performing the double duty of legal advocate and personal representative of the client—was supposed to file a separate document (a "warrant of attorney"—what we would now call a "power of attorney") that attested to the fact that their client had appointed them to be their attorney (in the narrow sense of the word). Despite the existence of this law, the Pennsylvania court acknowledged that "it is not the practice, and ... never has been, in this state, [for counselors at law] to file ... warrants of attorney; [and yet they] still ... receive their fees and speak [for their clients], without their authority ever being questioned." *Mercer v. Watson*, 1833 WL 3318 at *17.

This merging of the two roles of counselor and attorney continued in America—to the point where, today, many legal professionals would be unable to correctly describe the common-law distinction between "counselor" and "attorney at law" unless they performed legal research of the sort described above. But for purposes of resolving the arguments raised by Crane in this petition, the important thing is that, as a matter of Alaska law, the term "attorney" now encompasses *both* meanings.

Alaska Bar Rule 63(b) defines the practice of law as "either ... representing another before a court or governmental body ..., including the submission of pleadings, or[,] for compensation, providing advice or preparing documents for another which affect legal rights or duties."

In other words, Alaska's definition of the "practice of law" includes both the common-law role of an "attorney" (that is, a person who agrees to be the personal representative of a client who is absent from court) and the common-law role of a "counselor" (that is, a person who gives legal advice, submits court documents, and pleads a client's case in court). Indeed, Alaska Bar Rule 9(a) declares:

The license to practice law in Alaska is a continuing proclamation by the supreme court of the State of Alaska ... that the holder is fit to be entrusted with professional and judicial matters and to aid in

the administration of justice as an attorney and counselor, and to act as an officer of the courts.

Throughout our bar rules, the word "attorney" is used as a synonym for someone licensed to practice law.[7]

Thus, under Alaska law, the word "attorney" is defined more broadly than it was two centuries ago at common law. "Attorney" now means someone who is authorized to perform both the role of an "attorney" and the role of a "counselor" (as those words were understood in the past).

For these reasons, Crane is mistaken when he claims that there are no "counselors at law" in Alaska. Under Alaska law, every person who is licensed as an "attorney" is authorized to engage in the same activities that, under the common law, were performed by "counselors".

For similar reasons, we reject Crane's assertion that it is unlawful for a defendant in a criminal case to be represented by an "attorney". Crane's assertion is true only when the word "attorney" is used in its narrow common-law sense of a personal representative who could come to court as a substitute for a party, thus allowing the party to be absent from court.

Blackstone, in the passage we quoted previously, speaks of the rule that a criminal defendant must personally attend the proceedings:

> An attorney at law ... is one who is put in the place, stead, or turn of another, to manage his matters of law. Formerly every suitor was obliged to appear in person, to prosecute or defend his suit.... This is still the law in criminal cases.

Thus, at common law, although a defendant in a criminal case might have the assistance of counsel (i.e., the assistance of a counselor at law or barrister), a defendant could not appoint an attorney (in the older, narrow sense) to be their agent for the pur-

pose of appearing in court as a substitute for the defendant during the proceedings. Instead, the defendant had to be personally present in court.

(Alaska still follows this rule in felony cases—see Alaska Criminal Rule 38(a)—although the rule is relaxed in misdemeanor cases. Alaska Criminal Rule 38(c)(2) declares that, "[i]n prosecutions for offenses punishable [only] by fine or by imprisonment for not more than one year, ... the court, with the written consent of the defendant, may permit arraignment, plea, trial, and imposition of sentence in the defendant's absence.")

But as we have already explained at length, Alaska law now defines the word "attorney" in a broader sense than its common-law meaning. Under Alaska law, an attorney is someone who is authorized to perform both the common-law role of an "attorney" (that is, a person who agrees to be the personal representative of a client who is absent from court) and the common-law role of a "counselor" (that is, a person who gives legal advice, submits court documents, and pleads a client's case in court). We therefore reject Crane's assertion that criminal defendants can not be represented by "attorneys".

*Crane's argument that the Board of Governors of the Alaska Bar Association and the Alaska Supreme Court lost their authority to certify and admit applicants to the practice of law in 1976*

■ In 1955, the territorial legislature of Alaska passed our first integrated bar act—a law requiring all people who practice law in Alaska to be licensed by, and to be a member of, the Alaska Bar Association. *See* Laws 1955, ch. 196, which was codified in Title 35 of the Alaska Compiled Laws Annotated ("Business and Professions") as §§ 35–2–77a—35–2–77o.[8]

---

7. For example, see the following Alaska Bar Rules: Rule 1, section 1(b); Rule 2, section 1(d)(10); Rule 2, section 2(a)(2); Rule 2, section 2(c)(2); Rule 5, section 1(a)(6); Rule 5, section 3; Rule 7, section 5; Rule 9(c); Rule 9(e); Rule 10(c); Rule 10(e); Rule 11(a); Rule 11(b); Rule 11(d)(3); Rule 12(a)(2); Rule 12(d); Rule 12(e); Rule 12(g)(4); Rule 12(j); Rule 13(a); Rule 13(c); Rule 13(g); Rule 14(3); Rule 15(a)-(c);

Rule 21(c)(5); Rule 22(b); Rule 24(a); Rule 26(a)-(h) & (k); Rule 27(a); Rule 28(a)-(f) & (h)-(j); Rule 29(a)-(c) & (e)-(f); and Rule 30(a)-(i).

8. For the pre–1955 statutes governing attorneys, see ACLA (1949) §§ 35–2–21–35–2–77. These statutes were originally enacted in Laws 1941, ch. 32.

Under section 8 of the 1955 act, codified as § 35–2–77h, the Board of Governors of the Alaska Bar Association was given the "power to adopt rules fixing the qualifications, requirements and procedure for admission to the practice of law, except as otherwise provided in this Act [§§ 35–2–77a—35–2–77o herein]". (Bracketed material in the original) In other words, the Board of Governors could adopt rules governing these matters, but only to the extent that the legislature had not already enacted rules on these same matters.

And, in fact, other sections of the 1955 act did specify many rules governing eligibility for admission to the bar and the procedure for obtaining admission to the bar. See sections 9 and 11 of Laws 1955, ch. 196—codified as § 35–2–77i and § 35–2–77k, respectively.

The section of particular importance to Crane's petition for review is § 35–2–77k. This statute (as amended following statehood by SLA 1960, ch. 178, § 5) read:

**Procedure for Admission.** The Board of Governors shall pass upon all applications for permission to practice law before the courts of Alaska, and when satisfied that an applicant has the requisite qualifications to practice as an attorney and counselor, the Board shall so certify to the Supreme Court of Alaska. Upon receiving such certification, unless objection be raised there[to] within five days, the Court shall make an order admitting the applicant, and the Clerk shall issue him a certificate of admission.[9]

In 1962, Alaska law was reorganized into its present form as the "Alaska Statutes".[10] The business and professions code (what had been ACLA Title 35) was transferred to a new business and professions code, AS 08.08. And in this process, § 35–2–77k became AS 08.08.200. The language quoted above was

altered somewhat in AS 08.08.200, but the differences are merely stylistic. Former AS 08.08.200 read:

**Procedure for admission.** The board shall pass upon all applications for admission to the Alaska Bar. When the board is satisfied that an applicant has fulfilled the requirements for admission to the bar, the board shall so certify to the supreme court of the state. Upon receiving the certification, unless objection is raised within five days, the court shall make an order admitting the applicant as an attorney at law in all the courts of the state. A certificate of admission shall thereupon be given to the applicant by the clerk of the court.

Crane concedes that if attorneys are indeed counselors at law (and, in the preceding section of this opinion, we have just held that they are), then ACLA § 35–2–77k and its successor, AS 08.08.200, authorized the Board of Governors of the Alaska Bar Association to certify, and the Alaska Supreme Court to approve and admit, all qualified applicants as attorneys and counselors.

But in 1976, the legislature revised the statutes governing attorneys and the practice of law (AS 08.08). See SLA 1976, ch. 181. As part of this 1976 revision, the legislature repealed AS 08.08.200 [11] and did not enact a substitute statute addressing this same topic.

Based on the legislature's repeal of AS 08.08.200, Crane argues that the legislature took away the Board of Governors' power to certify applicants as qualified to practice law, and likewise took away the Alaska Supreme Court's power to approve and admit new attorneys. Thus, Crane contends, if there are any counselors at law in Alaska, they had to have been admitted before AS 08.08.200 was repealed in 1976.

**9.** As originally enacted in 1955, this statute called upon the Board of Governors to send its certification to "the U.S. District Court for the Judicial Division in which the applicant resides". The next sentence then correctly stated, "unless objection be raised *thereto* within five days, ...". In 1960, following statehood, when the legislature changed the reference from the "U.S. District Court" to "the Supreme Court of Alaska", the legislature also (mistakenly) changed the word "thereto" to "therein".

**10.** See SLA 1962, ch. 16, §§ 1–2, in which the legislature adopted the bulk reorganization of the laws of Alaska prepared by the Alaska Legislative Council under the authority of SLA 1960, ch. 17, § 7.

**11.** *See* SLA 1976, ch. 181, § 11.

Crane's argument overlooks two things. First, although the legislature may have the power to abolish the Board of Governors' control over admission to the practice of law, the legislature can not strip the judicial branch of this power. This principle—that the judicial branch has ultimate control over admission to the practice of law—was announced in the pre-statehood decision of *In re Paul,* 17 Alaska 360, 366 (D.Alaska. Terr. 1957): "[S]ince an attorney is an officer of the court, whether he shall be admitted to practice before the court is a judicial and not a legislative question." Following statehood, this same principle was reaffirmed by our supreme court in *Application of Stephenson,* 511 P.2d 136 (Alaska 1973):

> [U]nder [this] court's inherent powers over admission to practice law, [a bar] rule [specifying the qualifications for practicing law] would be enforceable regardless of [a] more lenient [statutory] requirement[.] As we stated in *Application of Houston* [, 378 P.2d 644, 645 (Alaska 1963) ],
>
>> We have taken jurisdiction [of this case] pursuant to that provision of the Alaska Constitution vesting the judicial power of the state in this court and under the rule followed by the great majority of the states which holds that the supreme court of a state has the inherent and final power and authority to determine the standards for admission to the practice of law in that state. In adopting the majority rule, we recognize that the legislature may enact laws governing admission to practice law[,] but [we] hold that it may not require this court to admit on standards other than those accepted or established by the court.
>
> [We] take this opportunity to reiterate our holding in *Application of Houston* as to our inherent and final power and authority to determine the standards for admission to the practice of law in Alaska.

*Stephenson,* 511 P.2d at 140–41 (citations and footnotes omitted).

Second, and equally as important, the 1976 re-writing of AS 08.08 did *not* abolish the Board of Governors' authority to determine the qualifications for admission to the practice of law in this state, and to certify applicants who meet those qualifications to the Alaska Supreme Court, so that the court may license these applicants as attorneys.

It is true that the legislature repealed AS 08.08.200, the statute that formerly defined the procedure for admission to the practice of law in Alaska. But in the same session law (SLA 1976, ch. 181), the legislature repealed and re-enacted another statute, AS 08.08.080, adding a new subsection (b) in the process. This new subsection (b)—in particular, subsection (b)(1)—gave the Board of Governors the authority to "approve and recommend to the state supreme court ... rules concerning admission [to] ... and defining the practice of law". *See* former AS 08.08.080(b)(1) (the 1976 version, as enacted by SLA 1976, ch. 181, § 5). (This same language is now found in AS 08.08.080(a)(1).)

In other words, even though the legislature deleted the statutory provisions that specified the procedures for admission to the practice of law, the legislature at the same time gave the Board of Governors rule-making authority to establish substitute procedures in the Alaska Bar Rules. The Board of Governors, in conjunction with the Alaska Supreme Court, has exercised that authority in Alaska Bar Rules 1 through 9.

Bar Rule 1, section 2, declares: "Only those persons who fulfill all requirements for admission as provided [in the Bar Rules] shall be admitted to the practice of law in the State of Alaska...."

The bar rules specify the education and/or training that applicants must have; *see* Bar Rule 2, sections 1(b) and 3(a)-(c). The bar rules further specify that applicants must pass the bar examination approved by the Board of Governors; *see* Bar Rule 1, section 3, Bar Rule 4, and Bar Rule 5, section 1(a)(1). In addition, the bar rules specify that applicants must pass an examination testing their knowledge of the rules of professional conduct (the Multistate Professional Responsibility Examination); *see* Bar Rule 4, section 4, and Bar Rule 5, section 1(a)(2). Moreover, applicants must demonstrate that they are people "whose conduct justifies the trust of clients, adversaries, courts[,] and others with respect to the professional duties owed to them"; Bar Rule 2, section 1(d).

Bar Rule 4, section 4, states that after the bar examination is graded, the Board of Governors will certify a list of qualified applicants for admission to the practice of law, and will transmit this list to the Alaska Supreme Court for approval:

> The board shall certify to the supreme court the results of the bar examination and its recommendations as to those applicants who are determined [to be] qualified for admission to the practice of law and who have complied with the provisions of [Bar] Rule 5.

In turn, the Alaska Supreme Court, "[u]pon receiving certification of the eligibility of an applicant[,] . . . may enter an order admitting the applicant as an attorney at law in all the courts of the state and to membership in the Alaska Bar Association." Bar Rule 5, section 3.

Attentive readers will see that these two provisions, taken together, closely track the language that formerly appeared in the now-repealed AS 08.08.200. Under the procedures specified in the bar rules, the Board of Governors still determines who is qualified and eligible to practice law; the Board then certifies a list of qualified applicants to the supreme court; and the supreme court then enters an order formally admitting those certified applicants to the practice of law—basically the same process that existed when former AS 08.08.200 was in effect.

True, this procedure for admission to the practice of law is now specified in the bar rules rather than in a statute. But, as we explained above, the legislature has authorized this.

For these reasons, we conclude that the 1976 amendments to AS 08.08 did not abolish the authority of the Board of Governors and the Alaska Supreme Court to establish the qualifications and the procedure for admission to the practice of law in Alaska. The Board of Governors still lawfully screens applicants and then certifies qualified applicants to the supreme court, and the supreme court still lawfully admits qualified applicants to the practice of law.

*Conclusion*

For the reasons we have explained here, we AFFIRM the district court's ruling that representation by an attorney authorized to practice law in Alaska is the "assistance of counsel" guaranteed by the Sixth Amendment to the United States Constitution. All of the attorneys licensed to practice law in Alaska are in fact "counselors" as that term was understood at common law.

In addition, we reject Crane's assertion that no attorneys have been properly licensed in Alaska since 1976. The Board of Governors and the Alaska Supreme Court continue to have the authority to certify and admit attorneys.

Thus, if Crane employs an attorney who is authorized to practice law in this state, he will receive the assistance of counsel to which he is entitled under the federal and state constitutions.

If, despite our ruling, Crane still does not wish to hire an attorney to represent him, he can waive his right to counsel and choose to represent himself. Moreover, as the district court has already informed Crane, if Crane deliberately refrains from hiring an attorney, his failure to hire an attorney can be treated as a waiver of his right to counsel. However, before the district court either accepts a verbal waiver of counsel from Crane or makes a finding that Crane, by deliberate inaction, has waived his right to counsel, the district court must explain to Crane (1) the benefits of counsel and (2) the dangers of self-representation.

We recently emphasized this requirement in *Gladden v. State*, 110 P.3d 1006 (Alaska App.2005), another case where a defendant refused to hire an attorney because the defendant maintained that "attorneys" were not "counselors". We urge Crane's trial judge to read *Gladden*, 110 P.3d at 1009–1012, and then to make sure that Crane is fully informed of the consequences of his decision.