**David G. GLADDEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9429.

Court of Appeals of Alaska.

March 23, 2007.

---

David G. Gladden, pro se, Dillingham.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

A jury convicted David G. Gladden of driving with a suspended license.[1] He appeared pro se at trial. Gladden appealed his conviction, and we reversed because the record in his case did not show that he had knowingly and intelligently waived his right to counsel. On remand, the district court remedied that error. The court informed Gladden of the benefits of an attorney and of the hazards of self-representation. Gladden continued to insist that he wanted an attorney, but he refused to take the steps necessary to get one. The district court therefore found that Gladden, by this conduct, had impliedly elected to proceed pro se. The court also found that he had done so knowingly and intelligently. Gladden was again convicted. In this second appeal, he renews his claim that he was denied his right to counsel, and raises various other claims. We affirm his conviction.

*Gladden knowingly and intelligently waived his right to counsel*

Gladden renews his claim that his conviction is invalid because he was denied his Sixth Amendment right to counsel at arraignment, trial call, trial, and sentencing.

He argues that the district court was without jurisdiction to try him because he made no on-record waiver of the right to counsel.

■ In *Gladden I*, we held that Gladden had impliedly waived his right to counsel by refusing to hire an attorney despite District Court Judge Fred Torrisi's repeated warnings that trial would go forward whether he had an attorney or not.[2] As we explained in *Gladden I*, Gladden refused to accept an attorney who would not sign his "contract," even though Judge Torrisi warned him that "this method of securing counsel [was] extremely unlikely to result in his actually obtaining a lawyer, especially since the contract contains terms relating to the type of court, official bonds and seals, a 'true Civil Commission' and other provisions which might seem foreign and irrelevant to the usual criminal lawyer."[3]

On remand, Gladden continued to maintain that he had tried to hire an attorney but could not find one willing to sign his contract. Judge Torrisi therefore found that Gladden had impliedly waived his right to counsel by refusing to take reasonable action to secure an attorney. That finding is supported by the record. By insisting on an attorney who would sign his contract, while conceding he knew that no attorney would sign such a contract, Gladden waived his right to counsel.[4]

■ The record on remand also shows that Gladden's waiver was knowing and intelligent. In *Gladden I*, we explained the type of inquiry required once a defendant declares his intention to proceed pro se:

1. AS 28.15.291(a)(1); *Gladden v. State,* 110 P.3d 1006 (Alaska App.2005).

2. *Gladden,* 110 P.3d at 1010; *see also Crane v. State,* 118 P.3d 1084, 1093 (Alaska App.2005) (noting that deliberately refraining from hiring an attorney may be treated as a waiver of the right to counsel).

3. *Gladden,* 110 P.3d at 1009.

4. *Gottschalk v. State,* 602 P.2d 448, 451 (Alaska 1979) ("It has been well established that a non-indigent defendant who fails to retain an attorney within a reasonable time before trial may be found to have waived his right to counsel.") (citing *Ungar v. Sarafite,* 376 U.S. 575, 589, 84

S.Ct. 841, 849, 11 L.Ed.2d 921, 931 (1964); *United States v. Rubinson,* 543 F.2d 951, 963–64 (2d Cir.1976); *United States v. Casey,* 480 F.2d 151, 152 (5th Cir.1973); *United States v. McMann,* 386 F.2d 611, 618 (2d Cir.1967); *Relerford v. United States,* 309 F.2d 706, 708 (9th Cir.1962)); *see also United States v. Llanes,* 374 F.2d 712, 717 (2d Cir.1967) (quoting *United States v. Bentvena,* 319 F.2d 916, 936 (2d Cir. 1963) ("We and other courts of appeals have repeatedly made clear that the right to counsel 'cannot be ... manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.' ")).

This inquiry should be incorporated into the trial record ... and should include: advising the defendant of the right to counsel and the importance of having counsel; warning the defendant of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' "; and inquiring into the defendant's educational background, previous experience with criminal trials, and general competence.... [T]he defendant must possess the mental competence to understand the dangers and ramifications of self-representation.[5]

On remand, Judge Torrisi explained the importance of counsel and the disadvantages of self-representation in some detail. He warned Gladden that, while he had the right to represent himself, the decision to forego counsel "is almost always a bad one." He told Gladden that an attorney could, among other things: conduct jury voir dire and move to disqualify jurors; determine what motions to file; draft and object to jury instructions; contact, interview, and subpoena witnesses; request discovery; present expert witnesses; impeach trial witnesses; and move the court to take various actions, such as granting a judgment of acquittal. At the prosecutor's prompting, Gladden was also told that an attorney could try to negotiate a reduced sentence with the State and, if Gladden was convicted, represent him at sentencing.

Judge Torrisi further explained that the rules of evidence were complicated, and that it was almost impossible for a lay person to be familiar with all of them. He told Gladden that, without an attorney who knew when to object, the jury might hear inadmissible evidence that could affect the verdict. He warned Gladden that if he neglected to object to evidence at trial, he would not preserve his objection to that evidence for appeal. He told Gladden that there were pitfalls in appearing before the jury as both an advocate and a defendant, and that the jury might find his case less persuasive if he assumed both roles. He also warned Gladden that, if he represented himself, he could not appeal his conviction on the ground of ineffective assistance of counsel. Finally, he warned Gladden that if he decided to proceed pro se, he would not have the option to change his mind and demand an attorney mid-trial.

Under oath, Gladden said he understood what Judge Torrisi had explained to him. He also said that he understood how difficult it would be to try his case without an attorney. He acknowledged that he had read the United States Supreme Court's decision in *Johnson v. Zerbst,*[6] which declared "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." [7] He said he was not ill and was not under the influence of alcohol or drugs.

Judge Torrisi tried to establish Gladden's level of education, and to confirm that he worked as a pilot, to demonstrate for the record that Gladden was competent to represent himself. But Gladden refused to answer these questions "without the assistance of counsel." Gladden continued the position he took in his first trial: he said he would not waive his right to counsel, that he was not qualified or prepared to proceed without an attorney, but that he could not find one who was willing to sign his contract.[8]

At the close of Gladden's representation hearing, Judge Torrisi found that Gladden was intelligent, that he knew what he was doing, and that he had effectively waived his right to counsel by refusing to accept any attorney who would not sign a contract that he knew no attorney would sign.

---

**5.** *Gladden,* 110 P.3d at 1009 (quoting *James v. State,* 730 P.2d 811, 814 n. 1 (Alaska App.1987)) (quoting the Commentary to 1 ABA Standards for Criminal Justice § 6–3.6, at 6.39–40 (2d ed. 1982)).

**6.** 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

**7.** 304 U.S. at 462–63; 58 S.Ct. at 1022.

**8.** *Gladden,* 110 P.3d at 1008.

This conclusion is supported by the record. There was nothing particularly complex about Gladden's case; the State's evidence consisted of the testimony of the arresting officer and a certified copy of Gladden's driving record.[9] Gladden had already represented himself through one trial. Judge Torrisi explained the hazards of self-representation and the benefits of an attorney in considerable detail. Gladden said he understood the judge's explanation. He also said he understood how difficult it would be to try his case without a lawyer. Although Gladden refused to answer questions about his education or what he did for a living, Judge Torrisi had already been through a trial with Gladden; he therefore had grounds to find that Gladden was intelligent and could follow the rules of court and conduct his defense without being disruptive or disorderly. Given this record, we conclude that Gladden knowingly and intelligently waived his right to an attorney at trial and that Judge Torrisi did not err in requiring him to proceed pro se.

■ Gladden also argues that he was denied his right to counsel in his arraignment before Judge Torrisi on August 15, 2005. But Gladden was not arraigned on August 15, 2005; he was arraigned on February 19, 2003, before Magistrate Monte Brice. To the extent that Gladden intended to argue that he was denied his right to counsel during his arraignment before Magistrate Brice, his claim is inadequately briefed.[10] We therefore do not address it.

■ Gladden argues that he was denied his right to counsel at sentencing because Judge Torrisi did not obtain a separate waiver of counsel in that proceeding. Because Gladden did not raise this claim below, he must show plain error.[11]

Alaska courts have not addressed whether a valid waiver of counsel at trial remains in effect at subsequent proceedings, or whether the court must obtain a separate waiver at each proceeding. But the weight of authority in other jurisdictions is that a valid waiver remains in effect unless the defendant explicitly revokes it or there is a change of circumstance that gives the court reason to renew its inquiry.[12]

At sentencing, Gladden did not request counsel; nor has he pointed to any circumstance suggesting that the court should have conducted a new inquiry sua sponte. Because there is significant authority to support the court's conclusion that no renewed inquiry was necessary under these circumstances, Gladden has not shown plain error.[13]

■ Gladden's claim that he was denied counsel at his two trial calls fails for the same reason. Gladden's representation hearing was held in June 2005; his trial calls were held several months later, in August 2005, after Judge Torrisi had obtained a valid waiver of Gladden's right to counsel. Although Gladden continued to assert, as he had throughout his litigation, that he was being denied his right to counsel, he said nothing to suggest that he had changed his position and was willing to take realistic steps to hire an attorney or to demonstrate his eligibility for court-appointed counsel, or that his circumstances had changed in some other way. Gladden has therefore not shown plain error.

9. *Id.* at 1007.

10. *Katmailand, Inc. v. Lake and Peninsula Borough,* 904 P.2d 397, 402 n. 7 (Alaska 1995); *Petersen v. Mutual Life Ins. Co. of New York,* 803 P.2d 406, 410 (Alaska 1990).

11. *Winkler v. State,* 580 P.2d 1167, 1173 (Alaska 1978) (citing Alaska R.Crim. P. 47(b)).

12. *See, e.g., United States v. McBride,* 362 F.3d 360, 367 (6th Cir.2004); *United States v. Springer,* 51 F.3d 861, 864–65 (9th Cir.1995); *United States v. Unger,* 915 F.2d 759, 762 (1st Cir.1990); *United States v. Fazzini,* 871 F.2d 635, 642–43 (7th Cir.1989); *Panagos v. United States,* 324 F.2d 764, 765–66 (10th Cir.1963); *Davis v. United States,* 226 F.2d 834, 840 (8th Cir.1955); *State v. Steed,* 109 Ariz. 137, 506 P.2d 1031, 1033 (1973); *People v. Baker,* 92 Ill.2d 85, 65 Ill.Dec. 1, 440 N.E.2d 856, 860–61 (1982); *State v. Carpenter,* 390 So.2d 1296, 1299 (La.1980); *State v. Tiff,* 199 Neb. 519, 260 N.W.2d 296, 303 (1977); *State v. Mathis,* 39 Wis.2d 453, 159 N.W.2d 729, 732 (1968).

13. *Marrone v. State,* 653 P.2d 672, 676 (Alaska App.1982) (holding that error is not "plain" if reasonable judges could disagree as to whether error occurred).

*Gladden's other claims*

■ Gladden appears to argue that the supreme court violated the constitution by enacting Criminal Rule 5 and Criminal Rule 5.1, which provide, respectively, that a defendant must be advised of the right to counsel at arraignment and has the right to counsel at a preliminary examination. Gladden apparently is of the view that the supreme court, by enacting these rules, provided that these rights could be abrogated by supreme court order or by legislation. This argument fails. The supreme court enacted these rules to implement the constitutional right to counsel, not to supersede it.[14]

■ Gladden also argues that he was denied a fair trial because the judge and prosecutor had an interest in the outcome of his case. To support this claim, he notes that his criminal complaint identifies him by his social security number—conduct he claims "would place Gladden outside of any Constitution and without any constitutionally secured rights having accepted a benefit, *i.e.* gratuity as held in *In re Murchison,* 349 U.S. 133, 136 [, 75 S.Ct. 623, 625, 99 L.Ed. 942] (1955)." (Gladden apparently cites *In re Murchison* for the principle that "no man is permitted to try cases where he has an interest in the outcome." [15]) He also argues that the judge and prosecutor had an interest in his driver's license because the court system has entered into a cooperative agreement with the Child Support Enforcement Division. But Gladden does not articulate why including his social security number on the complaint, or the court system's cooperative agreement with the CSED, gave the judge and prosecutor an interest in the outcome of his case. His claim is thus inadequately briefed.[16]

■ Gladden also argues that his right to discovery under Criminal Rule 16 was violated because the State did not give him documents demonstrating that the judicial officers and prosecutors involved in his case were public officers of the State of Alaska. During trial, Gladden asked for a stay of proceedings so he could file an interlocutory appeal in this court concerning Rule of Professional Conduct 1.2, Criminal Rule 16(a), and his "right to have an independent judge." Gladden complained that the State had denied him "inculpatory and exculpatory evidence" having to do ·with "lawyers" and the "bar association." Gladden did not elaborate on the precise documents he was seeking. Judge Torrisi denied the stay after establishing that Gladden was seeking "bar rules, rules of professional conduct and legal opinions" and not police reports, criminal records, or other documents that the State must disclose under Rule 16.

There was no discovery violation. Gladden did not ask the trial court to compel any specific documents, nor did he explain how documents relating to "lawyers" and "the bar association" were material to his defense. In the absence of such a showing of materiality, the type of documents he was seeking, to the extent that they exist, are not of the type that the State was required to disclose under Rule 16.[17]

Gladden also argues that there are no attorneys properly licensed in Alaska because the Board of Governors of the Alaska Bar Association and the Alaska Supreme Court have no authority to certify and admit attorneys to practice law in this state. In *Crane v. State,*[18] we gave careful consideration to that claim, and rejected it.[19]

Lastly, Gladden claims that the district court had no authority to decide his case. We considered and rejected this same argument in *Gladden I.*[20]

---

**14.** *See McCracken v. State,* 518 P.2d 85, 88 (Alaska 1974) ("Both the Sixth Amendment to the United States Constitution and art. I, sec. 11 of the Alaska Constitution guarantee a criminal defendant the right to counsel.").

**15.** 349 U.S. at 136, 75 S.Ct. at 625.

**16.** *Katmailand,* 904 P.2d at 402 n. 7; *Petersen,* 803 P.2d at 410.

**17.** *See* Alaska R.Crim. P. 16(b).

**18.** 118 P.3d 1084.

**19.** *Id.* at 1086–93.

**20.** 110 P.3d at 1012.

*Conclusion*

Gladden's conviction is AFFIRMED.